JOPLIN, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.*

*No. 116. Argued September 5, 1972.—Decided October 3, 1972.*
(Also reported in 200 N. W. 2d 607.)

———
* Motion for rehearing denied, with costs, on November 28, 1972.

For the appellant there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *Charles Q. Kamps* and *W. Stuart Parsons* of counsel, all of Milwaukee, and oral argument by *Mr. Kamps.*

For the respondent there was a brief by *Charles L. Rustin,* attorney, and *Walter Eugene Brown* of counsel, both of Milwaukee, and oral argument by *Mr. Rustin* and *Mr. Brown.*

WILKIE, J. Two issues are raised by this appeal:

1. Is the insurance company estopped from asserting that misrepresentations had been made to it?

2. Should the trial court have directed the verdict that Thelma Joplin's misstatements increased the risk to the John Hancock Mutual Life Insurance Company?

*Alleged estoppel.*

Mrs. Joplin asserts that John Hancock is in no position to pursue its main contention that the trial court should have directed a verdict that Thelma Joplin's misstatements increased the risk to it, Mrs. Joplin claiming

that the company is estopped from taking this position (1) by the conduct of its soliciting agent in stating that it was okay for Thelma Joplin to not report his hospitalization, and in writing up the application without indicating this hospitalization in the application; and (2) by the failure of the examining physician to obtain details of X-ray and other examinations of the applicant. But Mrs. Joplin did not plead estoppel in connection with her complaint as is required of a party who raises the issue and relies on that estoppel.[6] Estoppel was not raised here until the appeal. Because of Mrs. Joplin's failure to plead estoppel or to raise the issue in the trial court we do not reach the merits of this contention on this appeal. Furthermore, there was no waiver here by John Hancock because John Hancock's ignorance of material facts relating to Thelma Joplin's health negatived a waiver.[7]

### Directed verdict.

The trial court should have directed a verdict that Thelma Joplin's misstatements increased the risk to John Hancock. In reviewing the allegation that the trial court erred in refusing to direct a verdict, this court has stated many times:

". . . (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." [8]

[6] *Schneck v. Mutual Service Casualty Ins. Co.* (1963), 18 Wis. 2d 566, 119 N. W. 2d 342.

[7] *Bade v. Badger Mut. Ins. Co.* (1966), 31 Wis. 2d 38, 46, 142 N. W. 2d 218.

[8] *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48.

In other cases we have said:

"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161. If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 198 N. W. 270. The weight and sufficiency of the evidence is for the jury *(Jolitz v. Fintch* (1938), 229 Wis. 256, 261, 282 N. W. 87), as is the weight to be given to the witness' positive or negative testimony. *Conrardy v. Sheboygan County* (1956), 273 Wis. 78, 82, 76 N. W. (2d) 560. Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury. *Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N. W. (2d) 303. If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N. W. (2d) 156." [9]

and further:

"A case should be taken from the jury and a verdict directed against a party:

" ' " . . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d)

---

[9] *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 699, 151 N. W. 2d 741. *See also: Flintrop v. Lefco* (1971), 52 Wis. 2d 244, 249, 190 N. W. 2d 140.

105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

"Also:

" 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man.' *Milwaukee v. Bichel* [(1967), 35 Wis. (2d) 66], 150 N. W. (2d) 419." [10]

In *Delaney*,[11] a case very similar to this one, we were confronted with misrepresentations as to the number of hospitalizations of Mrs. Delaney as an applicant for hospitalization coverage. She failed to mention 12 of her previous 14 hospitalizations. At trial, two of Prudential's underwriters and its medical director unequivocally testified that they would not have issued the policy had they been aware of Mrs. Delaney's hospitalizations for angina pectoris, asthma or tachycardia. Further, all three concurred that the 14 hospitalizations themselves would have caused the application's rejection on the basis that she was either hospital prone or a hypochondriac. To raise a jury question on the issue of increased risk, Mrs. Delaney elicited testimony from her physician to the effect that none of her hospitalizations were serious and her health was good at the time of her insurance application.

On appeal, this court held that a jury question was not presented. The court stated:

". . . In the absence of qualified testimony to the effect that persons engaged in the same type of insurance business, acting reasonably and naturally in accordance with the practice usual in the insurance industry, would have issued the policy even in the face of these misrepresentations, there is no basis for draw-

[10] *Zillmer v. Miglautsch, supra,* footnote 9, at pages 698, 699.

[11] *Delaney v. Prudential Ins. Co., supra,* footnote 8, at page 349.

ing any such inference and no jury question is presented." [12]

The court further noted that Mrs. Delaney's attempt to contradict, with evidence of her good health, the Prudential underwriters' testimony that the policy would not have been issued ignored the testimony that the 14 hospitalizations themselves would have been sufficient to defeat the application.

In the instant case, two physician-underwriters, Dr. Frank Kefferstan and Dr. Arthur Zintek, testifying for John Hancock, stated that persons engaged in the same type of insurance business, acting reasonably and naturally in accordance with the practice usual in the insurance industry, would not have issued the policy applied for in the face of these misrepresentations. Each indicated that he would have required further information and on analysis the usual practice would have been to issue a rated policy, if any. The testimony for the plaintiff of Dr. Kuzma, a pathologist, did not create a jury question. He did state:

"... it is my opinion [Thelma Joplin's] tuberculosis was inactive and ... his health in respect to tuberculosis should have been very good. ... My opinion is that the tuberculosis as reported in that material would not affect his health. ... Certainly [he may have died, of course, of other causes]. ... I believe it [this carcinoma, this cancer] is not related [to this tuberculosis]."

Although he had performed some service in an underwriting capacity (one hour a day) as medical director for a fraternal organization writing life insurance, he did not state an opinion in terms of "persons engaged in the same type of insurance business, acting reasonably and naturally in accordance with the practice usual in

---

[12] *Id.* at page 351.

the insurance industry"[13] and that they would have issued this policy at standard rates. Dr. Frank Kefferstan did testify for John Hancock that the company would have made Thelma Joplin "some sort of an offer to put him on a special premium classification group" had the company been aware of his former bout with tuberculosis. The testimony that the company might have issued a specially rated policy in no way pledged it to issue the particular policy applied for notwithstanding the misrepresentations.

We must conclude that since there was no qualified testimony here that the policy would have been issued even in the face of Thelma Joplin's inaccurate statements, the policy must be held void as a matter of law.

*By the Court.*—Judgment reversed.