INTERNATIONAL CHIROPRACTORS INSURANCE COMPANY, Respondent, v. GONSTEAD, D.C., and another, Appellants: GONSTEAD CHIROPRACTIC CLINIC, and others, Defendants.

*No. 618 (1974). Submitted on briefs February 4, 1976.— Decided March 2, 1976.*
(Also reported in 238 N. W. 2d 725.)

For the appellant, Douglas B. Cox. D.C., the cause was submitted on the brief of *Robert R. Studt* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

For the respondent the cause was submitted on the brief of *Axley, Brynelson, Herrick & Gehl* of Madison.

WILKIE, C. J.  This is an insurance coverage case. The general issue on appeal is whether the plaintiff-respondent, International Chiropractors Insurance Com-

pany, insured Douglas Cox, a Mount Horeb chiropractor, against chiropractic malpractice in its insurance policy issued to Clarence Gonstead, a chiropractor with whom Cox was associated in chiropractor practice. It did not. We therefore affirm the trial court ruling against coverage in a declaratory judgment action commenced by the plaintiff-respondent insurance company against the defendant-appellants Douglas Cox and Clarence Gonstead, and the defendants Gonstead Chiropractic Clinic, Karakahl, Inc., and Tamara and John Tatarchuk. The dispute arises from alleged chiropractic malpractice in connection with treatment of Tamara Tatarchuk by Douglas Cox during July of 1972. The Tatarchuks had commenced a lawsuit for alleged chiropractic malpractice against Douglas Cox (at a later date Clarence Gonstead was added as a party defendant in the Tatarchuk litigation and was subsequently dismissed). Defense of this action was tendered to the plaintiff-respondent company, and after denying coverage that company commenced the declaratory judgment action seeking a ruling to the effect that its policy did not cover the activities of Cox as a chiropractor.

The primary question on this appeal is whether the malpractice insurance policy issued in 1968 and insuring Gonstead provided coverage for the alleged malpractice of Cox. In his 1968 application for a malpractice insurance policy issued by the plaintiff-respondent company, Gonstead, who was a practicing chiropractor in Mount Horeb, Wisconsin, and a major figure at the Gonstead Clinic, listed under the designation "additional assistants to be covered under this policy," the name of Cox and other chiropractors practicing at the clinic. He left blank that part of the application which requested a "short statement as to partnership or other chiropractic business relationship."

The policy relevant to this appeal was issued on October 1, 1971, and provided coverage until October 1, 1972.

It listed only Gonstead as the insured. Under item 2, "names of nurses, technicians or receptionists," Cox was listed, along with other chiropractors and technicians at the Gonstead Clinic. The policy provided that the coverage was being provided "in consideration of the representations made in the application of the insured herein," and in consideration of the premium payment. The extent of coverage was defined as follows:

". . . against all sums which the insured shall become obligated to pay by reason of the liability imposed by law from any claim against the insured for damages on account of any malpractice in connection with professional services rendered or agreed to be rendered to a patient by the insured as a chiropractor, including the acts of any technician or nurse employed by insured while acting under his direction . . . ."

The policy also included the following exclusion:

."No liability shall be accepted by the company on account of liability to the insured arising out of agency, partnership or employment."

Cox was neither a chiropractor's assistant nor a chiropractic technician. He was a licensed chiropractor, and practiced his profession along with the other chiropractors at the clinic.

The plain and simple provisions of the policy make it abundantly clear that Cox's personal liability for alleged malpractice as a chiropractor is not covered by the policy. The policy clearly and unambiguously lists Gonstead as the one named insured, as did the application. Gonstead is covered for sums which he may be obligated to pay for "any malpractice in connection with professional services rendered or agreed to be rendered to a patient by the insured as a chiropractor, including the acts of any technician or nurse employed by insured while acting under his direction." He is thus covered for any personal liability and for any vicarious liability which

may be imposed upon him for the negligence of his assistants while acting under his direction. In other words, this is an *individual* malpractice insurance policy. Neither the Gonstead Clinic as a separate entity nor Cox as a chiropractor are directly covered.

When the terms of an insurance policy are plain on their face the policy should not be rewritten by courts to bind the insurer to a risk it was unwilling to assume and for which it was not paid.[1] When the provisions of the policy itself are not in any way ambiguous, there is no need to resort to technical rules of construction or to consider extrinsic evidence. The proper procedure is for the court to interpret the words of the policy from the point of view of a reasonable person in the position of the insured.[2]

It is true that Cox is listed as a nurse, technician, or receptionist in the policy, and as an assistant in the application. He is in fact neither a chiropractic technician nor a chiropractic assistant, as those terms would be understood by Gonstead, Cox, or any chiropractor. Even if the assumption is made that Cox could under certain circumstances function as Gonstead's employee-assistant, it is clear that the policy would not cover him directly, but would indemnify Gonstead, and only in situations where the assistant or technician is "acting under his direction."

It is evident that Cox was not "acting under [the] direction" of Gonstead in his treatment of Tamara Tatarchuk. Tamara Tatarchuk came to the clinic and asked for Cox personally. He regarded her as his patient and took full responsibility for her treatment. He diagnosed and treated her as a chiropractor, and not as a chiropractor's assistant or technician. The only connection of

---

[1] *Garriguenc v. Love* (1975), 67 Wis. 2d 130, 135, 226 N. W. 2d 414, and cases there cited.

[2] *Id.,* at pages 134, 135, and cases there cited.

Gonstead to this treatment came in an X-ray consultation initiated by Cox, and this fact alone did not reduce Cox to an employee-assistant acting under the direction of Gonstead. Cox's treatment of Tamara Tatarchuk is not covered by the terms of Gonstead's malpractice policy.

The appellants raise the further propositions for the first time on this appeal that (a) the insurance company is equitably estopped from denying that Cox is directly and personally covered by the policy, and (b) the insurance contract should be reformed to provide for such protection.

In addition to the fact that estoppel was not pleaded nor claimed at trial, and that ordinarily estoppel cannot be raised for the first time on appeal,[3] it is also clear on the merits that estoppel does not lie here. The coverage of this policy is limited to Gonstead, and Cox cannot avail himself of the doctrine of estoppel to impose a far greater risk upon the insurance company than it was prepared to assume. The Wisconsin rule is, as stated many times, that the doctrine of estoppel cannot be used to enlarge the coverage of an insurance policy.[4]

Although it does not appear from the record that reformation of the insurance contract was sought in the trial to the court below, it is clear that in any event Cox has not established the basis for reforming the contract to provide coverage for him. To win the reformation of an insurance contract, the insured must prove that there was a prior oral agreement between the parties which, through mistake or negligence, the written

[3] *Joplin v. John Hancock Mut. Life Ins. Co.* (1972), 55 Wis. 2d 650, 200 N. W. 2d 607; *Estate of Voss* (1963), 20 Wis. 2d 238, 121 N. W. 2d 744.

[4] *Madgett v. Monroe County Mut. Tornado Ins. Co.* (1970), 46 Wis. 2d 708, 710, 711, 176 N. W. 2d 314; *Ahnapee & Western Ry. v. Challoner* (1967), 34 Wis. 2d 134, 142, 148 N. W. 2d 646; *Artmar, Inc. v. United Fire & Casualty Co.* (1967), 34 Wis. 2d 181, 186, 148 N. W. 2d 641, 151 N. W. 2d 289.

policy does not express, although it was intended to so state.[5] Here there was no such oral agreement or understanding to which the reformed contract could conform.

All the mistakes on the application were made by Gonstead and not by anyone associated with the insurance company. Gonstead listed Cox as a chiropractic assistant when he clearly was not. A chiropractic assistant is a well-defined term in the chiropractic field, for which there exist specialized educational programs and separate degrees. A chiropractic assistant is strictly a medical aide who assists a chiropractor with certain details of treatment, but does not make diagnoses or administer chiropractic manipulations or adjustments.[6] It was also Gonstead's mistake when he left the space blank where the application requested information about the applicant's chiropractic partnership and business relationship.

It must also be concluded that the ability to remedy this mistake and the opportunity to do so were within the power of Gonstead, and not the company. A generalized knowledge by certain individuals in the International Chiropractors Association and the insurance company as to Cox's identity did not shift the burden in this regard to the company. All the company did was to take the "assistants" listed on the application, and quite understandably place them in the similar classification of nurses, technicians, and receptionists in the policy. When the policy was issued it listed Cox as a nurse, technician or receptionist. In spite of its manifest falsity, this designation was never corrected by Gonstead or anyone at the clinic during the four years the policy

[5] *Schuster v. Germantown Mut. Ins. Co.* (1968), 40 Wis. 2d 447, 162 N. W. 2d 129; *Ahnapee & Western Ry. v. Challoner, supra,* footnote 4.

[6] The Dictionary of Occupational Titles, Vol. 1, *Definitions of Titles,* pp. 126, 127.

was in effect. In fact, the clinic's accountant on two occasions corresponded with the company regarding personnel changes in this item. On both occasions he referred specifically to the classification "nurses, technicians, or receptionists," and on both occasions left Cox listed there.

Appellants argue that this court decided in *Jeske v. General Accident Fire & Life Assur. Corp.*[7] that the insured's failure to read the policy and discover the mistake is no bar to reformation. This is certainly true, but only in the situation where the company or its agent made the original error, not the insured. Also, this holding was based upon the fact that most insurance policies are " 'couched in technical terms and often complicated and involved.' " In *Martinson v. North Central Life Ins. Co.*[8] this court stated that, when a policy is not a multi-page, esoteric document, a failure to read and understand the simple terms of the policy does not relieve the insured of the effect of the policy provisions. The policy in this case is a one-page document, in fairly simple language. The mistakes are on the front of the page, and in a very prominent position. In item 1, Gonstead is listed as the only insured, and in item 2, Cox is listed as a nurse, technician or receptionist. Given the source of the mistake, and its prominence in the policy over a four-year period, it must be concluded that Gonstead had a duty to read the policy and rectify this glaring error.

Irrespective of Gonstead's duty to read, it is clear that there was never an oral agreement or understanding between the parties to which the written contract can be reformed. There was only Gonstead's subjective belief that Cox was fully covered which, under all the circumstances, was an unjustifiable view. Gonstead never had

---

[7] (1957), 1 Wis. 2d 70, 92, 83 N. W. 2d 167.

[8] (1974), 65 Wis. 2d 268, 277, 278, 222 N. W. 2d 611, 225 N. W. 2d 604.

any direct personal contact with anyone associated with the company, and it is obvious that the company at all times understood that it was insuring only Gonstead for his personal liability and his vicarious liability for the malpractice of his nonchiropractor assistants.

*By the Court.*—Judgment affirmed.