ARTMAR, INC., and others, Respondents, v. UNITED FIRE & CASUALTY COMPANY, Appellant.*

*February 2—February 28, 1967.*

* Motion for rehearing denied, without costs, on June 9, 1967.

184

For the appellant there were briefs by *Moen, Sheehan & Meyer* of La Crosse, and oral argument by *L. E. Sheehan.*

For the respondents there was a brief by *Edwards, Hafner & McDonald* of La Crosse, and oral argument by *Roger W. Hafner.*

WILKIE, J.   Two issues are raised on this appeal:

(1) Can the doctrine of estoppel be used to bring a location not included in an insurance contract within the coverage of the policy risk?

(2) Was there a sufficient issue of fact as to the existence of a different agreement than the one contained in the insurance contract so that the motion for summary judgment on the reformation cause of action should be denied?

*Estoppel.*

The issue in this case is whether the outbuildings on the "Kunnert property" come within the coverage of the United Fire & Casualty Company policy. The policy clause expressly covers only the residential dwelling on the property. Plaintiffs contend that defendant is estopped from denying coverage because of the knowledge and conduct of defendant or its agents.

Essentially, plaintiffs are attempting to expand the policy's coverage by estoppel. Wisconsin has repeatedly held that estoppel cannot be used to create a liability for benefits not contracted for at all.[1]  Permitting estoppel

---

[1] *Albert v. Home Fire & Marine Ins. Co.* (1957), 275 Wis. 280, 81 N. W. (2d) 549; *Summers v. Oakfield Town Mut. Fire Ins. Co.* (1944), 245 Wis. 40, 13 N. W. (2d) 518; *Two Rivers Dredge & Dock Co. v. Maryland Casualty Co.* (1918), 168 Wis. 96, 169 N. W. 291; *Rosenthal v. Insurance Co. of N. A.* (1914), 158 Wis. 550, 149 N. W. 155; *McCoy v. Northwestern Mut. Relief Asso.* (1896), 92 Wis. 577, 66 N. W. 697; Anno. 4 A. L. R. (2d) 868, 872; Anno. 1 A. L. R. (3d) 1139, 1147–1150; 29A Am. Jur., Insurance, p. 289, 290, sec. 1135.

in such cases would extend the contract to a liability which the parties understood and expressly agreed should not be covered by the contract. The policy behind this rule is to avoid creating a new contract providing coverage for which no premium has been paid. Respondents' cases cited to establish the use of estoppel to expand coverage are not in point because they involve cases where the insurer was estopped from relying on a forfeiture or exclusion clause.[2]

## *Reformation.*

Respondents have also pleaded a second cause of action for reformation of the insurance contract. In their complaint the respondents allege that they always intended and believed that the insurance policy as issued by the defendant included the outbuildings as part of the general location covered by the policy, and that the policy failed to cover the outbuildings by virtue of the mistake or neglect of the agent, Ralph Larson. A cause of action for reformation of an insurance policy is allowed when the one seeking reformation shows that because of fraud or mutual mistake the policy does not contain provisions desired and intended to be included.[3] In insurance cases less is required to make out a cause of action for reformation than in ordinary contract disputes.[4] One reason for this standard is quoted in *Jeske v. General Accident Fire & Life Assur. Corp.:* [5]

---

[2] *State Automobile Casualty Underwriters v. Ruotsalainen* (S. D. 1965), 136 N. W. (2d) 884—exclusionary clause; *Jeske v. General Accident Fire & Life Assur. Corp.* (1957), 1 Wis. (2d) 70, 83 N. W. (2d) 167—exclusionary clause; *Spohn v. National Fire Ins. Co.* (1926), 190 Wis. 446, 209 N. W. 725—forfeiture clause. See also, *Ahnapee & W. R. Co. v. Challoner*, ante, p. 134, 148 N. W. (2d) 646.

[3] *Center Street Fuel Co. v. Hanover Fire Ins. Co.* (1956), 272 Wis. 370, 75 N. W. (2d) 462.

[4] Id. at page 373.

[5] *Supra*, footnote 2, at page 89.

" 'In common practice the assured informs the agent of his coverage necessities and leaves it entirely to the agent to provide therefor. The average individual accepts the policy tendered relying upon the assurance on the part of the insurer, express or implied, that the policy affords him the coverage desired.' "

The standard for reformation of an insurance contract where fault or neglect of the agent is involved is spelled out by 13 Appleman, Insurance, p. 368, sec. 7609:

"Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made. Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual. The insured has been held entitled to a reformation and is not limited to a return of the policy and demand of a rescission.

"A mistake due to the negligence of an agent, acting within the scope of his employment, is satisfactory ground for reformation, since the insured ordinarily relies upon the agent to set out properly the facts in the application. . . ."

This statement permits an action for reformation when there is a mistake by the agent, even though the mistake is not technically mutual. Moreover, the statement recognizes the reliance which most people place upon an insurance agent to protect their interests.

Appellant's motion for summary judgment denying plaintiffs' cause of action based on reformation is grounded on its assertion that reformation requires a prior mutual agreement which is not embodied in the contract because of fraud or mutual mistake, and no such prior agreement exists in this case. Appellant asserts that there can be no issue of fact concerning the

existence of a prior agreement to which the insurance contract can be reformed because the plaintiffs' president cannot positively assert that he ever told Agent Larson that he wanted the outbuildings on the property covered nor that he ever told Agent Larson that he was storing inventory in the outbuildings thereby requiring location coverage on them.

The rules on summary judgment were recently collated in *Leszczynski v. Surges*.[6] Summary judgment will not be granted except in cases where there is no issue of fact. When the motion is made by a defendant, it must be accompanied by an affidavit which sets forth sufficient evidentiary facts to show that the defense is sufficient to defeat the plaintiff. The moving party must make out a *prima facie* case in his motion and affidavits. If a *prima facie* case is established the court then examines the affidavits in opposition to the motion to see if the other party's affidavits show facts sufficient to entitle him to trial. The proof shown must only be substantial enough to raise questions of fact. Any evidentiary facts in an affidavit are to be taken as true unless contradicted by other opposing affidavits or proof.

The premise which must be established by the defendant to entitle it to summary judgment is that there never was an understanding that Larson was to insure the outbuildings as part of the location coverage on the Kunnert property. Essentially, the proof in the affidavit supporting defendant's motion consists of the depositions of plaintiffs' president, Robert Hickisch, and Agent Larson. These depositions are designed to show (1) that Hickisch never communicated to Larson his desire for location coverage on the outbuildings, and (2) that Hickisch never told Larson that he was storing inventory in the outbuildings, thus requiring location coverage. If this is established, appellant argues, then location coverage of the outbuildings was never con-

---

[6] (1966), 30 Wis. (2d) 534, 141 N. W. (2d) 261.

templated by the parties and there is no mutual agreement to which the present insurance contract can be reformed.

More specifically, defendant's affidavit makes the following points:

(1) That Agent Larson represented several insurance companies.

(2) That immediately upon acquisition, said Robert M. Hickisch secured a fire insurance policy upon the structures of said property which consisted of a one and one-half story frame dwelling house and a detached garage or shed referred to as an outbuilding; that said policy of insurance was secured through Ralph Larson and was from the Herman Mutual Insurance Company and that said policy contained provisions stating that 10 percent of the basic insurance on the dwelling house would automatically extend to cover the outbuilding or outbuildings.

(3) That at the time he took out this policy with Herman, Hickisch did not know what he was going to do with the property.

(4) That when it became necessary to take out insurance on the property again, Agent Larson got out a United Fire & Casualty policy and Hickisch assumed the 10 percent extension still applied to cover the outbuildings.

(5) That Hickisch cannot remember ever telling Agent Larson that he was storing merchandise in the outbuilding.

(6) That the only statement which led Hickisch to believe the property was covered was the statement by Larson that he was automatically covered in the outbuildings by his house insurance.

(7) That Agent Larson denied knowing that inventory was being stored in the outbuilding.

A substantial issue of fact remains as to whether Agent Larson negligently or mistakenly failed to incor-

porate the insurance desires of Hickisch into the insurance contract. There is no dispute but that Larson had handled Hickisch's business insurance for twelve years and that Hickisch placed heavy reliance on Larson to give him the kind of coverage he wanted. Hickisch felt that Larson would know what insurance he was writing and would provide him with adequate coverage. This was a business relationship of long standing in which a great deal of confidence had been placed in Larson. Under the policy which Larson wrote with Herman Mutual, the outbuilding was covered by a 10 percent extension of the insurance on the dwelling. Thus, Larson knew that Hickisch desired some insurance coverage on the outbuilding when Hickisch asked for a new policy with United, and any dealings the parties had should be viewed in this background. Nothing in the appellant's depositions refutes this, and Hickisch himself states that he assumed the outbuildings would be automatically covered. Thus, the appellant has not established a *prima facie* defense to a cause of action for reformation of the insurance contract to include a provision extending 10 percent of the dwelling coverage to the outbuilding.

As to location coverage of the outbuilding by the entire $5,000 amount of the policy, there is also a question of fact to be resolved. Plaintiffs' affidavits create a factual dispute as to whether the outbuilding was part of the location covered by the entire amount of the policy. In plaintiffs' affidavits, Hickisch affies that an underwriting agent of the defendant, Keith Caves, inspected his premises including the outbuilding, noted that inventory was stored in the outbuilding, and commented on the wiring. Hickisch assumed that the actions of Caves and Larson were correlated so that Larson was aware of the need for location coverage insurance on the outbuilding, but Caves negligently failed to report his findings to United. Plaintiffs also include a letter to Agent Larson telling him to specifically include any outbuildings where

insured items were to be stored. These facts, if true, create an inference that Larson might have known that merchandise was being stored in the outbuilding and that the scope of the location coverage might have excluded the outbuilding because of the negligence of Larson in insuring plaintiffs.

Plaintiffs, through Hickisch, also affy that they always referred to the Kunnert property as a whole when discussing coverage on the inventory and contents. They did not refer to the outbuilding separately, nor did they express a desire to treat it separately for insurance purposes. These averments contradict the affidavits of the defendant and create an issue of fact as to the scope of the location coverage. The motion for summary judgment as to the second or reformation cause of action was properly denied.

*By the Court.*—Order affirmed.

The following memorandum was filed June 16, 1967.

PER CURIAM (*on rehearing*). On motion for rehearing, our attention has been called to an erroneous statement of fact in the decision and for that reason the following is stricken from the first page of the opinion that appears at 34 Wis. (2d) 183:

". . . A basic coverage policy, issued by Herman Mutual Insurance Company, was used to provide a specific amount for each location. A reporting form policy, issued by Midland Mutual Casualty Insurance Company, supplemented the basic coverage policy and was designed to cover inventory fluctuations at a location."

In lieu thereof the following is inserted:

". . . A limit policy on contents, issued by Herman Mutual Insurance Company, was in effect for other Artmar properties, which policy provided coverage on contents for each location on a reporting form basis.

After the Kunnert property was acquired, plaintiffs were issued a policy by the Midland Mutual Casualty Insurance Company, which policy was on the structure of the main building of the Kunnert property, with provisions stating that 10 percent of the basic insurance on the dwelling house would automatically extend to cover the outbuilding or outbuildings."

This error in the facts does not otherwise alter the statement of facts or the substance of the court's opinion or the outcome of this case, but for accuracy a further correction should be made in the opinion by striking from the opinion under sub. (2) on page 189 the words "Herman Mutual Insurance Company" and inserting in lieu thereof "Midland Mutual Casualty Insurance Company;" and in addition, at page 190, lines 10 and 11 should be altered by striking "Herman Mutual" and inserting "Midland Mutual."

For clarification purposes, since there is no cause of action under estoppel, the previous mandate of the court is amended to read:

*"By the Court.*—Order modified to grant summary judgment on cause of action for estoppel and, as so modified, affirmed."

The motion for rehearing is denied without costs.