Jamie VANDENBERG, Plaintiff-Appellant,

v.

The CONTINENTAL INSURANCE COMPANY, Defendant-
Third-Party Plaintiff-Respondent,

Leonard RIEHL and Stephanie L. Riehl, Defendants-
Co-Appellants,

DUMKE INSURANCE AND FINANCIAL SERVICES, INC. and
Curt C. Fritz, Third-Party Defendants-Co-Appellants.

Supreme Court

*No. 99–3193. Oral argument April 11, 2001.—Decided July 3, 2001.*

2001 WI 85

(Also reported in 628 N.W.2d 876.)

805

For the plaintiff-appellant there were briefs by *Christopher H. Evenson* and *Sigman, Janssen, Stack, Wenning, Sewall & Pitz*, Appleton, and oral argument by *Christopher H. Evenson*.

For the defendants-co-appellants there were briefs (in the court of appeals) by *Keith W. Kostecke* and *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.*, Appleton.

For the third-party defendants-co-appellants there were briefs (in the court of appeals) by *Bruce A. Olson* and *Olson Law Group, LLC*, Appleton, and oral argument by *Bruce A. Olson*.

For the defendant-third-party plaintiff-respondent there was a brief by *Eric J. Magnuson, Daniel Q. Poretti, Jeanne A. Unger* and *Rider, Bennett, Egan & Arundel, LLP*, Minneapolis, and oral argument by *Jeanne A. Unger*.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of an appeal from a judgment of the Circuit Court for Outagamie County, Dee R. Dyer, Circuit Court Judge. The appeal is before this court on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000).

¶ 2. Infant Justin Vandenberg, while in a day care center operated by Stephanie Riehl, suffocated to death. The plaintiff, Jamie Vandenberg, Justin's mother, sued Leonard Riehl and Stephanie L. Riehl and their insurer, The Continental Insurance Company, alleging Stephanie Riehl's negligent supervision and control of her five-year-old child, who allegedly caused harm to Justin. Two issues are presented: (1) Does a day care provider's allegedly negligent supervision and control of her own child while providing day

care services for other children fall, as a matter of law, within the "usual to non-business pursuits" exception to the "business pursuits" exclusion in a renter's insurance policy? (2) Are there material issues of fact from which a trier of fact could conclude that the Riehls were entitled to reformation of their renter's insurance policy to include day care coverage?

¶ 3. The circuit court granted summary judgment to Continental Insurance, holding that the Riehls were not entitled to insurance coverage for the death of Justin Vandenberg and that the Riehls were not entitled to reformation of their renter's insurance policy to include coverage for their day care business.

¶ 4. We reverse that part of the summary judgment in favor of Continental Insurance that the Riehls were not entitled to insurance coverage for the death of Justin Vandenberg. We direct the circuit court to grant the plaintiff's motion for a declaratory judgment, concluding that the Riehls' supervision and control of their son falls within the "usual to non-business pursuits" exception to the "business pursuits" exclusion of the policy.

¶ 5. Additionally, we reverse that part of the judgment of the circuit court granting summary judgment to Continental Insurance that the Riehls are not entitled to reformation of their renter's insurance policy to cover their home day care business. Accordingly, we remand the cause to the circuit court for further proceedings not inconsistent with this opinion.[1]

---

[1] The Continental Insurance Company filed a third-party claim against Dumke Insurance and Financial Services, Inc., an insurance agency, and its employee, Curtis C. Fritz, alleging that Fritz was negligent in completing the Riehls' application for renter's insurance or in failing to comply with Continental Insurance's instructions, or both. In particular, Continental

¶ 6. An appellate court reviews a circuit court's grant of summary judgment independently of the circuit court, benefiting from its analysis. *Lambrecht v.*

Insurance alleges that it would have rejected the Riehls' application if it had known that the Riehls wanted liability coverage for their home day care operation. Continental Insurance requests indemnification from Dumke Insurance Services, if Continental Insurance is required to provide coverage to the Riehls for the plaintiff's claim for Stephanie Riehl's negligent supervision and control of her own child.

The Riehls cross-claimed against Dumke Insurance Services and Fritz, alleging that Fritz was negligent in completing the Riehls' application. Although the Riehls did not request liability coverage for the day care operation, they contend that Fritz should have asked whether the Riehls wanted day care coverage since a prior policy issued through Dumke Insurance Services included liability coverage for the day care operation. The Riehls allege that Fritz's negligence in failing to acquire appropriate insurance entitles them to reformation of Continental Insurance's policy or, in the alternative, to indemnification from Dumke Insurance Services.

In its brief opposing Continental Insurance's motion for summary judgment, Dumke Insurance Services asserted that if the circuit court granted summary judgment to Continental Insurance on the issue of reformation, Dumke Insurance Services would be entitled to summary judgment on both Continental Insurance's third-party claim and the Riehls' cross-claim.

The circuit court granted Continental Insurance's motion for summary judgment on reformation but denied Dumke Insurance Services' motion for summary judgment dismissing all claims against it, as well as its subsequent motion for reconsideration. Dumke Insurance Services petitioned the court of appeals for leave to appeal this non-final judgment. The court of appeals denied Dumke Insurance Services' petition. Accord-

*Estate of Kaczmarczyk*, 2001 WI 25, ¶ 21, 241 Wis. 2d 804, 623 N.W.2d 751. Summary judgment is properly granted when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Lambrecht*, 2001 WI 25 at ¶ 24.

## II

¶ 7. We turn to the first issue. For purposes of the motion for summary judgment relating to the renter's insurance policy coverage, the facts are not in dispute. On December 16, 1997, Stephanie Riehl was providing paid day care in her home for three children, one of whom was eight-month-old Justin Vandenberg. She was simultaneously caring for her own three children, including five-year-old Jason.

¶ 8. Sometime in the afternoon, Stephanie Riehl brought Justin to her upstairs bedroom for a nap. She secured Justin in a child seat and placed the seat on the floor of the bedroom. While Stephanie Riehl was caring for the remaining children downstairs, her son Jason went upstairs to her bedroom to watch television.

ingly, this aspect of the cause is not before this court; it is before the circuit court.

However, the circuit court's denial of Dumke Insurance Services' motion for summary judgment is relevant to Dumke Insurance Services' arguments regarding reformation. Dumke Insurance Services contends that the circuit court could not have denied its motion for summary judgment unless it found that there was a disputed issue of material fact as to whether the Riehls had requested day care coverage. Dumke Insurance Services further contends that if there is a factual issue as to whether the Riehls requested day care coverage, the circuit court erred in granting Continental Insurance's motion for summary judgment on the issue of reformation. We discuss the reformation issue in part III of this opinion.

Jason placed several pillows over Justin in an attempt to avoid waking him.[2] When Stephanie Riehl returned to check on Justin, she discovered that he had suffocated.

¶ 9. Jamie Vandenberg, Justin's mother, filed suit against the Riehls, alleging both negligent supervision of Justin and negligent supervision of their own son. The Continental Insurance Company, which had issued a renter's insurance policy to the Riehls, was also named as a defendant.

¶ 10. Jamie Vandenberg, the plaintiff, moved for declaratory judgment that her claim against the Riehls for the negligent supervision of their own son was covered by the Continental Insurance policy under the "usual to non-business pursuits" exception to the "business pursuits" exclusion. Continental Insurance moved for summary judgment dismissing itself from the action alleging that as a matter of law, the plaintiff's claims against the Riehls fell within the "business pursuits" exclusion to the insurance policy but did not fall within the "usual to non-business pursuits" exception to that exclusion.

¶ 11. The circuit court granted Continental Insurance's motion for summary judgment, dismissing Continental Insurance from the action, and denied the plaintiff's motion for declaratory judgment. The circuit court concluded that the "usual to non-business pursuits" exception to the "business pursuits" exclusion did not apply to the plaintiff's claim because the Riehls' usual non-business pursuit of supervising their own son was tainted by their home day care business.

---

[2] Wisconsin Stat. § 891.44 (1999–2000) states that "[i]t shall be conclusively presumed that an infant minor who has not reached the age of 7 shall be incapable of being guilty of contributory negligence or of any negligence whatsoever."

¶ 12. The plaintiff and the Riehls appealed from the circuit court's summary judgment in favor of Continental Insurance.

¶ 13. To determine whether the plaintiff's claim falls into the "usual to non-business pursuits" exception to the "business pursuits" exclusion in the renter's insurance policy, we begin by looking at the policy language.

¶ 14. The renter's insurance policy excludes "business pursuits" from liability coverage, but excepts from "business pursuits" those activities that are "usual to non-business pursuits." Thus the policy insures for bodily injury arising out of business pursuits so long as the bodily injury arises out of activities that are usual to non-business pursuits. The exclusion and exception provisions in the policy read as follows:

> I. Personal Liability and Medical Expense do not apply to bodily injury or property damage:
>
> . . .
>
> j. Arising out of business pursuits of you or any covered person. This exclusion does not apply to:
>
> (1) Activities which are usual to non-business pursuits. . . .

¶ 15. The policy language defining "business" explicitly states that a home day care business is considered a business pursuit. The circuit court concluded, and the parties agree, that the Riehls' day care operation was a "business pursuit."

¶ 16. The legal issue in dispute is whether Stephanie Riehl's care of her own five-year-old child while operating a home day care business is an activity that is "usual to non-business pursuits" excepted from the "business pursuits" exclusion of the insurance policy.

¶ 17. The plaintiff asserts that the "usual to non-business pursuits" exception applies because parents are continually engaged in supervising and caring for their children. The plaintiff concludes that supervising and caring for one's own child is not ordinarily part of or related to the 'home day care business but is an activity usual to non-business pursuits.

¶ 18. In contrast, Continental Insurance asserts that the correct interpretation of the policy language requires a case-by-case analysis of the immediate context of the activity giving rise to the claim. Continental Insurance argues that because Stephanie Riehl regularly supervised and cared for her own son while simultaneously providing day care services as a business, the activity of caring for her own son was usual to her business pursuit and not within the "usual to non-business pursuits" exception.

¶ 19. The court of appeals' certification memorandum discusses three court of appeals cases that have addressed the non-business pursuits exception. The court of appeals first addressed the non-business pursuits exception in *Bartel v. Carey*, 127 Wis. 2d 310, 379 N.W.2d 864 (Ct. App. 1985), in which the insured was a band member who had hitched a trailer to a van in preparation for travel to a concert. The trailer later detached and struck a vehicle, killing an occupant. The court of appeals determined that hitching a trailer and traveling were activities common to everyday life but that they must be examined in the immediate context of the activity from which the claim arose. Because the van and trailer were being used for business purposes, that business use "tainted" the otherwise usual non-business activity of hitching a trailer to a vehicle. "To hold otherwise would implicate two unreasonable results: robbing the exception of effect and expanding

coverage to risks not contemplated under the policy."[3] The court of appeals concluded that the claim did not fall within the non-business pursuits exception and denied coverage under the "business pursuits" exclusion.

¶ 20. After *Bartel*, the court of appeals decided *Ruff v. Graziano*, 220 Wis. 2d 513, 583 N.W.2d 185 (Ct. App. 1998), in which the non-business pursuits exception arose in the context of a day care business. In *Ruff*, a child under the care of the day care provider drowned during a visit to the beach. The court of appeals followed the reasoning of *Bartel* and held that although a trip to the beach may ordinarily be incident to non-business pursuits, when viewed in its immediate context the beach trip in that case was directly related to the day care business. The court of appeals concluded that the business exclusion provision precluded coverage for a day care provider who took the children to the beach where a child drowned. It found that the non-business pursuits exception did not apply because the trip to the beach had to be considered in the context of the day care business. The court of appeals determined that the trip was part of the day care business and did not fall within the non-business pursuits exception.[4]

¶ 21. The third case cited by the court of appeals and on which the parties have focused is *Rufener v. State Farm Fire & Casualty Co.*, 221 Wis. 2d 500, 585 N.W.2d 696 (Ct. App. 1998). In *Rufener* the court of appeals held that insurance coverage existed under the non-business pursuits exception when the victim was injured while helping install equipment in the

---

[3] *See Bartel v. Carey*, 127 Wis. 2d 310, 318, 379 N.W.2d 864 (Ct. App. 1985).

[4] *See Ruff v. Graziano*, 220 Wis. 2d 513, 524–25, 583 N.W.2d 185 (Ct. App. 1998).

insured's garage for use in the insured's part-time snowplowing business. The *Rufener* court rejected the *Bartel* "tainted" analysis approach. The court of appeals concluded instead that for the non-business pursuits exception to be more than illusory, the policy must cover some incidents that occur as a result of activities that arise out of the insured's business pursuit.[5]

¶ 22. *Rufener* applied two principles to determine whether a claim falls within the exception to the business pursuits exclusion. First, the court of appeals stated that the activity giving rise to the injury is not examined in isolation; rather, the activity is examined in its immediate context. The court of appeals held in *Rufener* that the context of the activities giving rise to the injury was the installation of the equipment for the insured's business, but that the installation was not an ordinary part of the insured's business because it was a one-time occurrence.[6] In addition, the installation occurred in a separate place and at a separate time from the insured's income-producing activity.

¶ 23. Second, the court of appeals stated that a court must look to objective factors to determine whether the activity giving rise to the injury was ordinarily part of or related to the insured's business.[7] The court of appeals examined in *Rufener* such objective factors as the frequency of the activity in relation to the business pursuit and its closeness in time and place to the actual income-producing activity.

---

[5] "The exception operates to restore coverage to some activities that admittedly 'arise out of' the insured's business pursuits." *Rufener v. State Farm Fire & Cas. Co.*, 221 Wis. 2d 500, 511, 585 N.W.2d 696 (Ct. App. 1998).

[6] *See Rufener*, 221 Wis. 2d at 510.

[7] *See Rufener*, 221 Wis. 2d at 509–10.

¶ 24. At the outset, we note three limitations to applying *Bartel, Ruff,* or *Rufener* to this case. First, each of these cases rests upon a review of policy language that differs somewhat, although not substantially, from the language of Continental Insurance's policy. Both *Rufener* and *Bartel* reviewed a non-business pursuits exception to the business pursuits exclusion that restored coverage for activities "ordinarily incident to non-business pursuits." In *Ruff,* the court reviewed an exception that restored coverage for activities "in conjunction with business pursuits which are ordinarily considered non-business in nature." Here, the exception in Continental Insurance's renter's policy restores coverage for activities "usual to non-business pursuits." One commentator has noted that decisions involving the business pursuits exclusion often turn on the precise wording of the policy language.[8] As a result, the fact that *Bartel, Ruff,* and *Rufener* did not address the precise policy language at issue here limits their applicability to this case.[9]

¶ 25. Second, a renter's insurance policy is intended to protect an insured "within the personal sphere of the policyholder's life. . . ."[10] The day care business cases present special difficulty in ensuring

---

[8] *See* Lawrence A. Frazier, *The Business Pursuits Exclusion in Personal Liability Insurance Policies: What the Courts Have Done with It,* 1970 Ins. L. J. 519, 534.

[9] *See* Lawrence A. Frazier, *The Business Pursuits Exclusion in Personal Liability Insurance Policies: What the Courts Have Done with It,* 1970 Ins. L. J. 519, 534 ("[N]ot all clauses have been worded the same. It [is] extremely important, therefore, to examine the policy closely. . . .").

[10] *See Bartel,* 127 Wis. 2d at 317 (citing Lawrence A. Frazier, *The Business Pursuits Exclusion Revisited,* 1977 Ins. L. J. 88, 89).

that the "usual to non-business pursuits" exception of the policy protects the insured's personal sphere because the operation of a home day care business includes many of the same activities that are part of the personal sphere of the policyholder's life.

¶ 26. Third, although the three court of appeals cases state that a court should consider the immediate context of the activity in question, they provide no guiding principle for this fact-specific inquiry. We can discern no clear rule from these cases that would allow a court to determine whether under the particular facts of any given case an activity falls within the non-business pursuits exception. The *Rufener* objective factor test may be helpful in some fact situations, but it cannot be a governing principle in the present case. The difficulty in applying *Rufener* is evident in the parties' arguments before this court.

¶ 27. The plaintiff and Continental Insurance agree that the *Rufener* analysis should be applied to this case, but they disagree whether the application of *Rufener* favors the plaintiff or Continental Insurance.

¶ 28. The plaintiff asserts that application of *Rufener* to this case results in coverage under the insurance policy. The plaintiff urges that a home day care provider's care of her own son is not motivated by or necessary for the production of income or the operation of the home day care business and is not ordinarily part of or related to the home day care business. According to the plaintiff, although the accident here occurred during the operation of the day care business, Stephanie Riehl's supervision of her own child was an activity that is ordinarily non-business in nature. The plaintiff relies on the *Rufener* court's recognition that activities that fall under the non-business pursuits exception will by their very nature have some degree of

involvement with a business pursuit.[11] The plaintiff urges the court to look at what ordinarily occurs outside a day care business, namely the mother's care of her son, to determine whether an incident is covered under the "usual to non-business pursuits" exception.

¶ 29. In contrast, Continental Insurance argues that a court should look at what ordinarily occurs within a day care business to determine the meaning of the "usual to non-business pursuits" exception. According to Continental Insurance, *Rufener* clearly forecloses coverage in this case because Stephanie Riehl's supervision of her son was undertaken in the context of her day care business. Continental Insurance urges that Stephanie Riehl's supervision of her son was ordinarily part of her day care business: Her care of her son occurred at her day care facility and occurred while she was providing day care. The day care business determined how, when, and why she was supervising her son. According to Continental Insurance, the claim arose out of activities that occurred in Riehl's place of business during business hours and directly involved the business clients. Continental Insurance further argues that the child would not have died had he not been in Riehl's care at the time and that requiring insurance coverage in this case creates insurance coverage for every day care provider, defeating the business pursuits exclusion that excludes coverage for hazards associated with income-producing activities.

¶ 30. Continental Insurance urges us to glean from *Rufener* the guiding principle that an activity that regularly occurs within the business setting cannot fall within the "usual to non-business pursuits" exception.

---

[11] *See Rufener*, 221 Wis. 2d at 511.

Continental Insurance argues that if the court accepts the plaintiff's argument, the non-business pursuits exception would swallow the rule and would defeat the purpose of the business pursuits exclusion, which is to exclude coverage for hazards associated with regular income-producing activities. Continental Insurance asserts that *Rufener* strikes the proper balance between the "business pursuits" exclusion and the non-business pursuits exception by looking at the risks that are usually associated with the business. According to Continental Insurance, a risk associated with a day care business is that the day care provider's own child would injure one of the children for whom day care is being provided.

¶ 31. We disagree with Continental Insurance's argument for two reasons. First, Continental Insurance's reliance on *Rufener* is misplaced. *Rufener* is inapposite. The court in *Rufener* considered a business activity that was a one-time occurrence, the installation of special equipment in the insured's garage. The analysis in *Rufener* is not wholly applicable to the facts of this case, in which we consider an activity that occurs regularly both inside and outside the business. In particular, the *Rufener* court did not need to consider what the impact would be if the installation that caused the injury occurred ordinarily as a part of business and non-business activities.

¶ 32. Second, Continental Insurance's position requires us to read the "usual to non-business pursuits" exception as limited to those activities that not only regularly occur outside the business setting (that is, "usual to non-business pursuits") but also do not regularly occur within the business setting. Thus, Continental Insurance's position requires the court to insert words in the non-business pursuits exception so

818

that the exception would except from the business pursuits exclusion activities that are "usual to non-business pursuits *and unusual to business pursuits*." We decline to rewrite the insurance policy in this manner.

¶ 33. Continental Insurance's approach risks making the "usual to non-business pursuits" exception to the business pursuits exclusion illusory, superfluous, and without effect. The court of appeals explained in *Rufener* that the exception has meaning: "The exception operates to restore coverage to some activities that admittedly 'arise out of' the insured's business pursuits."[12] Therefore, coverage must be extended to liabilities arising from an act or omission "even though the act or omission is connected in some manner with the insured's 'business pursuits,' "[13] if the act or omission is also connected in some manner with an activity ordinarily not associated with the insured's business pursuits.

¶ 34. We must interpret the "usual to non-business pursuits" exception to provide meaningful coverage under this exception.

¶ 35. We turn for assistance to cases from other jurisdictions interpreting the non-business pursuits exception to the business pursuits exclusion. Cases involving day care providers can be found both in sup-

[12]*See Rufener*, 500 Wis. 2d at 511.

[13]*See Floyd v. Northern Neck Ins. Co.*, 427 S.E.2d 193, 196 (Va. 1993). *See also Myrtil v. Hartford Fire Ins. Co.*, 510 F.Supp. 1198, 1202 (E.D. Pa. 1981); *State Farm & Cas. Co. v. Moore*, 430 N.E.2d 641, 645 (Ill. Ct. App. 1981).

819

port of[14] and in opposition to Continental Insurance's position.[15] Several courts, including our own court of appeals, and at least one commentary have recognized that the cases are varied and contradictory. [16] From our own review of the case law from other jurisdictions

[14] *See, e.g., Allstate Ins. Co. v. Mathis*, 706 N.E.2d 893 (Ill. Ct. App. 1999) (no coverage where child under insured's care suffocated after blankets fell on child); *Economy Fire & Cas. Co. v. Basse*, 525 N.E.2d 539 (Ill. Ct. App. 1988) (no coverage where one child in day care was struck by a vehicle driven by a parent picking up another child in the day care); *Susnik v. Western Indemnity Co. Inc.*, 795 P.2d 71 (Kan. Ct. App. 1989) (no coverage where a cared-for child was injured by another child); *Safeco Ins. Co. v. Howard*, 782 S.W.2d 658 (Mo. Ct. App. 1989) (no coverage where day care provider's son sexually abused the children under her care).

[15] *See, e.g., Gallo v. Grosvenor*, 572 N.Y.S.2d 506 (N.Y. App. Div. 1991) (coverage where day care provider's own son sexually assaulted a child in her care); *Robinson v. Utica Mut. Ins. Co.*, 585 S.W.2d 593 (Tenn. 1979) (coverage existed where a child being cared for as a part of business injured the insured's grandchild); *Floyd*, 427 S.E.2d 193 (coverage provided when child in day care was injured by lawn mower driven by day care provider's child).

[16] *See, e.g., Myrtil*, 510 F.Supp. at 1202 (E.D. Pa. 1981) ("Obviously, the matter is not free of doubt. In fact, this clause has been the subject of considerable litigation. . . . [N]early all of the courts have found the language difficult of interpretation and application."); *Floyd*, 427 S.E.2d at 195–96 ("Other jurisdictions, however, have interpreted the same or similar language in a child care context using various analyses."); *Rufener*, 221 Wis. 2d at 507 ("The exception to the business pursuits exclusion has been heavily litigated in many jurisdictions with varying results that cannot be fully reconciled."); *Bartel*, 127 Wis. 2d at 316 ("Though no Wisconsin case has construed this exception, the problem has been dealt with elsewhere. However, courts have not reached uniform results. . . .").

and the various attempts to reconcile case law, we perceive at least five approaches that courts have used to resolve the question of when the exception to the business pursuits exclusion applies, although many cases have not explicitly stated their methodology. [17]

For a collection of cases relating to child care and the business pursuits exclusion and the non-business pursuits exception, see David J. Marchitelli, Annot., *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy*, 35 A.L.R.5th 375, §§ 70–83 (1996).

[17] Courts have described other approaches. *See, e.g., State Farm*, 430 N.E.2d at 644–45 (examining cases occurring in a day care context and finding consideration of at least three factors: (1) whether the activity is conducted for the purpose of furthering the insured's business; (2) whether the activity that gave rise to the claim occurred at the place of business; and (3) whether the insured is engaging in a dual purpose); *Floyd*, 427 S.E.2d at 195–96 (reviewing the exception in the child care context and finding three approaches: (1) a focus on the specific activity of the caretaker; (2) a focus on whether a lack of proper supervision in a home child care context directly related to the business of caring for children; and (3) a focus on the language of the exception and characterizing it as ambiguous).

The court of appeals has also examined approaches from other jurisdictions without reaching a conclusion on their viability. *See Bartel*, 127 Wis. 2d at 316 (explaining three approaches from other jurisdictions: (1) exception applies to activities that are in no way related to the insured's business; (2) exception applies to activities associated with the insured's business that are typically engaged in as part of personal life; and (3) exception is ambiguous and must be construed against the insurer).

Numerous cases focus on the activity giving rise to the claim to determine whether the particular acts or omissions of the insured may be characterized as non-business even though they were causally related to and occurred in the course of business pursuits. These cases do not provide guidance in decid-

¶ 36. One approach is to inquire whether the activity giving rise to the injury contributes to or furthers the interests of the business. If the activity does not, the activity falls within the "usual to non-business pursuits" exception because it is not conduct that is solely attributable to the business.[18]

¶ 37. A second approach focuses on the nature of the duty that was allegedly breached.[19] Coverage under the insurance policy exists when the duty that

---

ing whether the activity in question is ordinarily incident to business or usual to non-business pursuits because they reach conclusions with little if any analysis. *See, e.g., Susnik,* 795 P.2d 71 (no coverage where a cared-for child was injured by another child because the insured's business was caring for the child); *Safeco,* 782 S.W.2d 658 (no coverage where day care provider's son sexually abused the children she cared for because her failure to supervise her own son was ordinarily incident to her business).

For a collection of cases relating to child care and the business pursuits exclusion and the non-business pursuits exception, see David J. Marchitelli, Annot., *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy,* 35 A.L.R.5th 375, §§ 70–83 (1996).

[18] *See, e.g., Vermont Mut. Ins. Co. v. Gambell,* 689 A.2d 453 (Vt. 1997) (coverage existed when three dogs, not owned by or cared for by the insured, caused a customer to slip and fall in driveway because failure to maintain driveway in safe condition and failure to prevent dogs from roaming the property were not duties that contributed to the insured's pet-sitting business; the acts or omissions did not contribute to or further the interest of the business).

[19] For a collection of cases adopting this approach, see David J. Marchitelli, Annot., *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy,* 35 A.L.R.5th 375, §§ 70–74 (1996).

was breached exists aside from the business activity.[20] Coverage under the insurance policy does not exist when the duty that was breached is incident to the business pursuit. Thus if the theory of liability is failure to care for the child entrusted to the day care provider in the day care situation, then the claim is not covered under the insurance policy.[21]

¶ 38. A third approach is to ask whether the activity giving rise to the claim is directly related to or separate and apart from the business pursuit. If the activity is separate and apart from the business pursuit, a claim is covered by the policy. [22] Thus a policy is held to cover a child in day care injured by a lawn mower, because mowing the lawn is an activity not associated with day care. [23]

¶ 39. A fourth approach is to construe the "usual to non-business pursuits" exception very narrowly in favor of the insurance company and against the

[20] See, e.g., Robinson, 585 S.W.2d 593 (coverage existed where a child being cared for as a part of business injured the insured's grandchild because the insured did not breach a duty toward the cared-for child, but toward her grandchild).

[21] See, e.g., Allstate, 706 N.E.2d 893 (no coverage when blankets fell on child under insured's paid care and suffocated because insured's duty to protect and supervise the children under her care arose within her business).

[22] See, e.g., Kirsch v. Aetna Cas. & Sur. Co., 598 So. 2d 109 (Fla. Ct. App. 1992) (reversing summary judgment for insurer when child in day care was burned by hot bacon grease because whether day care provider regularly cooked breakfast as an activity separate and apart from her business was a determination to be made by the fact-finder).

[23] See Floyd, 427 S.E.2d 193 (coverage provided when child in day care was injured by lawn mower driven by day care provider's child because mowing the lawn was not directly related to the day care).

insured. In effect, the courts engage in a "but for" analysis, asking but for the business would the incident giving rise to a claim have occurred. If the incident would not have occurred but for the business, the claim is not covered by the insurance policy. [24]

¶ 40. A fifth approach is to construe the exception narrowly in favor of the insured and against the insurance company.[25] This approach is consistent with Wisconsin case law on interpretation of insurance policies. Under this approach the courts reason as follows: Interpretation of an insurance policy ordinarily is a question of law for an appellate court to determine independently, benefiting from the analysis of the circuit court.[26] A court gives language in an insurance policy its common and ordinary meaning, construing the insurance policy as would a reasonable person in the position of the insured.[27] When an insurance policy read in context is reasonably susceptible to more than

[24] *See, e.g., Economy Fire,* 525 N.E.2d 539 (no coverage where child in day care was struck by a vehicle driven by a parent picking up another child in the day care because child would not have been injured if the parent had not had to pick up her own children).

[25] *See, e.g., Myrtil,* 510 F.Supp. 1198 (coverage existed because the exception, "activities therein which are ordinarily incident to non-business pursuits," is ambiguous and must be construed against the insurer); *State Farm,* 430 N.E.2d 641 (coverage existed because applying the exception, "activities therein which are ordinarily incident to non-business pursuits," to the facts of the case creates an ambiguity, which is resolved in favor of the insured).

[26] *Hull v. State Farm Mut. Auto. Ins. Co.,* 222 Wis. 2d 627, 636, 586 N.W.2d 863 (1998).

[27] *See Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.,* 221 Wis. 2d 800, 806, 586 N.W.2d 29 (Ct. App. 1998)

one construction, it is ambiguous.[28] An ambiguity in an insurance policy is resolved against the insurer and in favor of the insured.[29] Policy provisions tending to limit liability are narrowly construed against the insurer.[30]

¶ 41. Under this fifth approach, courts acknowledge that the non-business pursuit exception has been subject to considerable litigation across the country and "nearly all of the courts have found the language difficult of interpretation and application."[31] Faced with this conflicting body of case law, these courts have concluded that the exception is ambiguously worded and must be construed against the insurance company.

¶ 42. We have studied the numerous cases and are unable to find any readily identifiable meaning in the language "usual to non-business pursuits," when read with the exclusion for business pursuits in day care business cases such as the present one. We therefore join the courts that have characterized language similar to that in the Continental Insurance's renter's insurance policy regarding the "usual to non-business

---

(quoting *Cieslewicz v. Mut. Serv. Cas. Ins. Co.*, 84 Wis. 2d 91, 97–98, 267 N.W.2d 595–98 (1978)).

[28] *See Wisconsin Label*, 221 Wis. 2d at 806.

[29] *Myrtil*, 510 F.Supp. 1198 (when language of an insurance policy is ambiguous, the provision is construed in favor of the insured because the insurance company could "cure the ambiguity by using more explicit language which would place the meaning of the clause beyond question"); *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230, 564 N.W.2d 728 (1997) (ambiguities in a policy's terms are to be resolved in favor of coverage because the insurer is the party best suited to eliminate ambiguity).

[30] *See Donaldson*, 211 Wis. 2d at 230.

[31] *See Robinson*, 585 S.W.2d at 595.

pursuits" exception to the "business pursuits" exclusion when applied to the undisputed facts of this case as ambiguous. Reasonable persons in the position of the plaintiff in the present case could reasonably believe that they had coverage under this exception for the supervision and control of their own child. The rule of narrow construction against the insurance company applies in the present case in which the ambiguity exists as an exception to liability.[32]

¶ 43. We therefore conclude that the renter's insurance policy provides coverage to the Riehls for the plaintiff's claim that Stephanie Riehl was negligent in supervision and control of her own child, who allegedly caused harm to Justin.

¶ 44. We are mindful that too broad an interpretation of the "usual to non-business pursuits" exception might significantly limit the "business pursuits" exclusion. "To [read the "usual to non-business pursuits" exception too broadly] would require insurers to provide liability coverage for many persons (e.g. self-employed cooks, gardeners, and janitors) under homeowners policies merely because these businesses involve activities common to non-business life." [33]

¶ 45. Coverage in the present case under the "usual to non-business pursuits" exception does not, however, result in the exception swallowing the rule of the "business pursuits" exclusion. The plaintiff acknowledged at oral argument that if her child had merely tipped over in his child seat and suffocated,

---

[32] The business pursuits exclusion is not ambiguous in the present case. The Riehls were engaged in a business pursuit in the operation of a home day care business. The ambiguity arises from the "usual to non-business pursuits" exception to the broad exclusion for business pursuits.

[33] See Bartel, 127 Wis. 2d at 317.

giving rise to a claim of negligent supervision of her child in day care, there would be no coverage under the renter's insurance policy. The Riehls concede that they have no coverage for the claim that Stephanie Riehl negligently supervised the deceased infant. Holding that coverage exists for Stephanie Riehl's negligent supervision of her own child does not apply the language of the "usual to non-business pursuits" exception so broadly that the business pursuits exclusion becomes meaningless, nor does it interpret the "usual to non-business pursuits" exception so narrowly as to render the exception illusory. Thus, our decision that the renter's insurance policy covers the Riehls' alleged negligent supervision of their own child rests comfortably within a middle ground between these two problematic outcomes.

## III

¶ 46. We now turn to the issue of reformation. The circuit court determined that the parties agreed that the Riehls did not request day care coverage and that, as a matter of law, the Riehls were therefore not entitled to reformation. Accordingly, the circuit court granted Continental's motion for summary judgment on this issue.

¶ 47. We have concluded that the plaintiff's claim that the Riehls negligently supervised and controlled their own son falls within the coverage of the insurance policy. Reformation of the insurance policy is therefore not necessary or relevant to this claim. Because coverage for the plaintiff's claim that the Riehls were negligent in caring for the plaintiff's infant Justin in the operation of their home day care business is barred

by the business pursuits exclusion, reformation of the insurance policy remains an issue.[34]

¶ 48. Although the facts surrounding the issuance of the Riehls' renter's insurance policy are largely in dispute, the undisputed facts are as follows: An earlier policy had been issued through Dumke Insurance and Financial Services, Inc., an insurance agency, that provided coverage to the Riehls for the home day care business; Curt C. Fritz, an employee of Dumke Insurance Services, knew that Stephanie Riehl was a day care provider; Leonard Riehl did not expressly request day care coverage during his meeting with employee Fritz; at the end of the meeting with employee Fritz, Leonard Riehl signed an insurance form filled out by Fritz that stated, among other things, that Leonard Riehl did not have a business in his home; and the Continental Insurance renter's insurance policy issued to the Riehls contained the business pursuits exclusion, specifically defining business pursuits as including day care operations.

¶ 49. Continental Insurance argues, and the circuit court agreed, that these undisputed facts entitled

---

[34] Reformation may also be relevant to the claims brought by Continental Insurance and the Riehls against Dumke Insurance Services, explained in note 1 above. The circuit court denied Dumke Insurance Services' motion for summary judgment to dismiss all claims against it. The circuit court apparently reasoned that Dumke Insurance Services might still be negligent if the trier of fact found that inquiring into the Riehls' file would have disclosed that the Riehls had performed home day care in the past and had coverage. Dumke Insurance Services argues that the implication of the circuit court denial of its motion is that it should have known that the Riehls were requesting liability coverage for their day care business. Accordingly, Dumke Insurance Services argues that the Riehls were entitled to reformation.

it to summary judgment on the issue of reformation. The Riehls and Dumke Insurance Services argue that two disputed facts exist that make summary judgment on the issue of reformation improper: (1) Was there a "mutual mistake" about the coverage of Continental Insurance's renter's insurance policy sufficient to warrant reformation? (2) Would Continental Insurance have issued a policy covering liability for the day care operation?

¶ 50. The general rule is that a contract may be reformed when the "writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing."[35] In granting Continental Insurance's motion for summary judgment denying reformation, the circuit court focused on the following language in *Trible v. Tower Insurance Co.*, 43 Wis. 2d 172, 182–83, 168 N.W.2d 148 (1969), that a mutual mistake must be proven for reformation:

> ¶ When a policy of insurance is involved, mutual mistake is proven when the party applying for insurance proves that he made certain statements to the agent concerning the coverage desired, but

---

[35] *Restatement (Second) of Contracts* § 155 (1979).

To win reformation of an insurance contract, the insured must prove that there was a prior oral agreement between the parties which, through mistake or negligence, the written insurance policy does not express, although the written insurance policy was intended to so state. *International Chiropractors Ins. v. Gonstead*, 71 Wis. 2d 524, 528–29, 238 N.W.2d 725 (1976) (citing *Schuster v. Germantown Mut. Ins. Co.*, 40 Wis. 2d 447, 162 N.W.2d 129 (1968); *Ahnapee & W.R. Co. v. Challoner*, 34 Wis. 2d 134, 137, 148 N.W.2d 646 (1968)).

the policy as issued does not provide the coverage desired.

¶ 51. The circuit court found that "the issue of Mrs. Riehl being a day care provider came up but. . .the evidence is that Mr. Riehl *did not* request business coverage for day care." The circuit court concluded that because the Riehls did not establish that they had made statements to employee Fritz requesting coverage for the day care business, they were not entitled to reformation.

¶ 52. The order of the circuit court makes clear that the circuit court was treating the express request described in *Trible* as the only type of evidence that would justify reformation of the insurance contract. However, the conclusion in *Trible* that reformation was justified when there was an express request for coverage does not compel the conclusion that there can be no reformation without an express request.

¶ 53. In the context of insurance contracts, there are special considerations regarding reformation. On the one hand, a policy may not be rewritten to bind the insurer to a risk that it did not contemplate and for which it received no premium.[36] But on the other hand, "in insurance cases less is required to make out a cause of action for reformation than in ordinary contract disputes."[37]

¶ 54. In *Artmar, Inc. v. United Fire & Cas. Co.,* 34 Wis. 2d 181, 148 N.W.2d 641 (1967), the court stated that "[a] mistake due to the negligence of an agent. . .is

---

[36] *See Int'l Chiropractors,* 71 Wis. 2d at 527.

[37] *Artmar, Inc. v. United Fire & Cas. Co.,* 34 Wis. 2d 181, 186, 148 N.W.2d 641 (1967). *See also Williams v. State Farm Fire & Cas. Co.,* 180 Wis. 2d 221, 234, 509 N.W.2d 294 (1993) (quoting *Artmar*).

satisfactory ground for reformation, since the insured ordinarily relies upon the agent to set out properly the facts in the application."[38] An action for reformation is permitted, stated the *Artmar* court, when there is a mistake by an agent even though the mistake is not technically mutual.[39]

¶ 55. In *Artmar* the insured could not positively assert that he had requested coverage for outbuildings. However, the insured alleged that he had always intended and believed that the insurance policy provided coverage for the outbuildings and that the policy did not provide coverage because of the mistake or neglect of the insurance agent.[40] This court affirmed the trial court's denial of the insurance company's motion for summary judgment. This court noted that the insurance agent had previously issued a policy that covered the outbuildings and that because the same agent drafted the earlier policy providing coverage, the agent knew that the insured wanted insurance coverage on the outbuildings. The *Artmar* decision makes clear that reformation may be justified when the insured can demonstrate that there was an understanding regarding the desired coverage based on prior dealings, even in the absence of an express request for coverage.

¶ 56. The Riehls argue that summary judgment on the issue of reformation was improper in the present case, because an issue of fact exists as to whether Dumke Insurance Services negligently failed to obtain liability coverage for the day care business. They argue that the evidence gives rise to an inference that the

---

[38] *Artmar*, 34 Wis. 2d at 187.

[39] *Id.*

[40] *Artmar, Id.* at 186.

parties had an understanding that day care coverage would be provided and that Dumke Insurance Services was negligent. They point to Fritz's knowledge that Stephanie Riehl was a day care provider, as well as to a prior policy the Riehls purchased through Dumke Insurance Services providing coverage for the Riehls' day care business.

██

¶ 57. *Artmar* is distinguishable from the facts of the present case. *Artmar* involved a case in which the parties had dealt with each other personally for several years. Nevertheless, we are not prepared to say, as a matter of law on a motion for summary judgment in the present case, that no reasonable trier of fact could find that a mutual mistake occurred based on the Riehls' belief that the policy provided coverage and the mistake or neglect of the agent in failing to provide the intended coverage.[41]

¶ 58. Continental Insurance makes one final argument against reformation, contending that reformation is not available because it does not provide the type of coverage that the insured intended.[42] Continental Insurance asserts that it presented undisputed evidence that it would not have issued day care coverage to the Riehls if they had requested it. Dumke Insurance Services disputes this assertion. The circuit court did not address this aspect of Continental Insur-

---

[41] The second half of the *Artmar* test for reformation, whether the policy did not provide coverage because of the negligence of the agent, is related to the circuit court's denial of Dumke Insurance Services' motion for summary judgment to dismiss the claims by Continental Insurance and the Riehls against it. *See* notes 1 and 34 above.

[42] *See* 2 Russ Segalia, *Couch on Insurance (Third)* § 27:4, at 27–9 (3d ed. 1999).

ance's argument,[43] and we cannot conclude as a matter of law that Continental Insurance would not have issued a renter's insurance policy to the Riehls that included coverage for their day care business.

¶ 59. In remanding to the circuit court, we note that regardless of the resolution of the disputed facts, the Riehls may not be entitled to reformation. The remedy of reformation is equitable in nature, so that a circuit court has discretion to withhold reformation, even if reformation would otherwise be appropriate, on grounds that have traditionally permitted courts of equity to withhold relief.[44] However, the circuit court's order makes clear that its decision was not based on equitable grounds but rather on the ground that no dispute existed that the Riehls did not expressly request liability coverage for their day care business. Since we conclude that facts regarding reformation are in dispute, we reverse the portion of the circuit court judgment granting summary judgment to Continental Insurance on the issue of reformation.

¶ 60. In sum, we reverse that portion of the circuit court's judgment granting summary judgment to Continental Insurance as to whether the renter's insurance policy covers the plaintiff's claim against the Riehls for negligent supervision and control of their own son. Furthermore, we reverse that portion of the circuit court judgment granting summary judgment to Continental Insurance on the issue of reformation. We

---

[43] Continental Insurance submitted a proposed order that included a finding that Continental Insurance would not have issued a policy to the Riehls had it known of the home day care business. The circuit court struck this finding from its order and did not address the parties' arguments on this issue.

[44] See Restatement (Second) of Contracts § 155 cmt d (1979).

therefore remand the cause to the circuit court for further proceedings not inconsistent with this decision.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded to the circuit court.

¶ 61. JON P. WILCOX, J. *(dissenting)*. The holding I glean from the majority's lengthy opinion is that, because some other courts around the country have come to opposite conclusions regarding an insurance contract provision similar to the one at issue here, this contract is ambiguous. *See* majority op. at ¶ 41. Because the majority strains to find the language ambiguous through extrinsic sources, it rules in favor of finding coverage. *See* majority op. at ¶¶ 42–43. As a result, the majority contravenes well-established precedent that holds that ambiguity in an insurance contract cannot be found through extrinsic sources. More troubling, however, is the fact that the majority favors unlicensed in-home day care facilities over licensed day care facilities that carry insurance for the risks associated with such businesses. For these reasons, I respectfully dissent.

I

¶ 62. I begin with the language in the renter's insurance contract. The contract language states:

LOSSES WE DO NOT COVER

1. *Personal Liability and Medical Expense* coverages do not apply to *bodily injury or property damage*:

. . .

834

j. Arising out of *business* pursuits of you or any *covered person*. This exclusion does not apply to:

(1) Activities which are usual to *non-business* pursuits;

Our methodology—before today—was well accepted. We have interpreted insurance contract language generally using the same rules that govern other contracts. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990). The purpose is to ascertain and carry out the intent of the parties. *Gen. Cas. Co. of Wis. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997). Policy language is interpreted according to its plain and ordinary meaning, as understood by a reasonable insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). If we determine that the language is ambiguous, it will be narrowly construed against the insurer. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 140, 596 N.W.2d 429 (1999). However, we do not go beyond the written document, unless we find ambiguity within it. *Id.*

¶ 63. The majority fails to find any ambiguity within the above insurance policy without resorting to extrinsic sources, such as court of appeals cases[1] and

---

[1] One court of appeals case that the majority opinion as well as the parties extensively discuss is *Rufener v. State Farm Fire & Casualty Co.*, 221 Wis. 2d 500, 585 N.W.2d 696 (Ct. App. 1998). There, coverage was found based on a substantially similar provision. *Id.* at 504. I find the *Rufener* opinion problematic for two reasons. First, like the majority opinion here, *Rufener* finds the provision ambiguous by looking to extrinsic materials and other jurisdictions rather than the plain language of the written contract. *Id.* 507–08. Second, *Rufener* asserts that the activity in question, installing a hoist that would assist with the

cases from other jurisdictions. Missing this analytical step of reviewing the policy itself in order to determine whether there is an ambiguity preordains a finding of coverage for the insured here.

¶ 64. However, in following our accepted analytical framework and applying the plain language of the provision to the present fact pattern, a denial of coverage must result. Jamie Vandenberg was sleeping in Stephanie Riehl's home because of her business activity. Her business activity created a heightened duty to supervise her child's interactions with customers of her day care facility, beyond just supervising her own child, an activity which is common to all parents. Her failure to supervise her child's interaction with Jamie Vandenberg, a customer of her in-home day care center, was not "an activity usual to a non-business pursuit." To find otherwise, as the majority opinion does here, is akin to ruling that driving one's car while on a business pursuit is a non-business activity, because one always must maintain control of one's car. The unambiguous plain language of this policy provision should not be read in so strained a manner, in order to find coverage in this case.

---

removal and reattachment of a salter/sander for a snowplowing business was not 'part of' the snowplowing business because it occurred at a "separate place and at a separate time from. . .[the] income-producing activity." *Id.* at 510. The error in this statement is manifest. There is no language in the policy provisions that distinguishes business activity based on its proximity to the income-producing activity. As long as it is a business activity—even if it is done only once—it is excluded by the plain language of the provision. Therefore, I believe *Rufener* was incorrectly decided, and is inapplicable to the fact situation presented in this case.

## II

¶ 65. More troubling than the analytical misstep in the majority's opinion, however, is its judicial favoritism for in-home day care facilities over licensed day care facilities, which must obtain insurance to cover the risks associated with operating such a business. *See* Wis. Admin. Code § HFS 45.03 (Apr., 2001). As Continental Insurance indicated in its brief, it would not have written the Riehls' policy if it was aware that they were providing day care to a child under the age of one without sufficient staff. A basic renter's insurance policy or homeowner's policy is not intended to cover the manifold risks in running a day care facility.

¶ 66. But now, under the majority's opinion, unlicensed in-home day care facilities will have a clear economic advantage over licensed day care centers, which are subject to the stringent requirements contained in Chapter 48 of the Children's Code and the Health and Family Services Administrative Code. *See* Wis. Admin. Code Chapter HFS 45 (Apr., 2001). Unlicensed in-home day care facilities will be able to get by with a cheaper renter's or homeowner's insurance policy, rather than a more comprehensive business policy that covers all the risks associated with running a day care center. Such a holding undermines the legislature's intent in Chapter 48 to provide safe insured day care facilities for Wisconsin children, and to prevent tragic accidents such as the one that befell Jamie Vandenberg. *See* Wis. Stat. § 48.67 (1999–2000).

## III

¶ 67. In summary, I would apply the plain, unambiguous language in the insurance policy at issue to find that there is no coverage in this case. I believe

that the majority erred by reaching out to use extrinsic sources in order to find ambiguity, thereby not following our well-settled analytical framework in interpreting an insurance contract. Further, I am deeply troubled by the majority's judicial favoritism for unlicensed home day care facilities, which clearly contravenes the intention of our legislature to provide safe insured day care facilities for Wisconsin children.

¶ 68. I am authorized to state that Justices N. PATRICK CROOKS and DAVID T. PROSSER join this opinion.