COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2627**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV1230

IN COURT OF APPEALS
DISTRICT III

KERSTNER'S TRANSMISSION & 4-WHEEL DRIVE CENTER, INC.,

  PLAINTIFF-APPELLANT,

V.

MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,

  DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.  Kerstner's Transmission & 4-Wheel Drive Center, Inc., ("Kerstner") appeals from a judgment dismissing its amended complaint

against Mesa Underwriters Specialty Insurance Company ("Mesa"). Kerstner argues that the circuit court erred in multiple respects when it granted Mesa's motion to dismiss the amended complaint. For the reasons that follow, we disagree and affirm.

## BACKGROUND

¶2 According to the amended complaint, Kerstner is a Wisconsin corporation that "consists, in part, of an inventory of automobiles parked" at a lot in Appleton.[1] The lot "does not have a fence along the perimeter," and the entrance to the lot "is blocked by a vehicle." Kerstner "sought insurance coverage for the risk of loss to the automobiles on the lot" and "communicated [its] request for casualty coverage on said automobiles to Mesa." In response, Mesa "assured Kerstner that a Commercial Insurance Policy through Mesa would provide casualty coverage for the risk of loss to the automobiles on [its] lot." Kerstner then purchased a commercial insurance policy from Mesa "and renewed it annually for several years."

¶3 The Mesa policy included a Garage Coverage Form, which provided, in relevant part, that Mesa "will pay for 'loss' to a covered 'auto' or its

---

[1] Many of the factual allegations in Kerstner's brief-in-chief are supported by citations to Kerstner's appendix. However, the Rules of Appellate Procedure require references to the appellate record, *see* WIS. STAT. RULE 809.19(1)(d)-(e) (2023-24), and an appendix "is not the record," *see* ***Ripp Distrib. Co. v. Ruby Distrib. LLC***, 2024 WI App 24, ¶16 n.7, 411 Wis. 2d 630, 5 N.W.3d 930. We admonish Kerstner's counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

equipment … [c]aused by … [t]heft."[2]  The policy also contained the following exclusion:

> **8. Theft or Conversion**
>
> We will not pay for "loss" caused by or resulting from:
>
>  ….
>
> (3) "Loss" due to theft of an "auto" or an "auto's" equipment when the described premises is closed for business or unattended if:
>
> **(a)** The location where the "auto" is located is not protected (including but not limited to protection at all entrances, exits, or openings, through the entire perimeter being surrounded by a fence with locked gates, posts and heavy chains with locks) ….

¶4      On March 25, 2020, Kerstner discovered that someone had stolen the catalytic converter from one of the vehicles on its lot.  Kerstner notified Mesa of the loss, and Mesa sent an adjuster to Kerstner's property to evaluate the loss. On May 6, 2020, Mesa issued Kerstner a check for the amount of the loss. Kerstner's amended complaint alleges that "both Kerstner and Mesa believed that the Mesa policy provided coverage for theft of a catalytic converter from a vehicle on Kerstner's lot," and "at no time in 2020 did Mesa inform Kerstner that [its] claim for theft was not covered."  The amended complaint further alleges that based on Mesa's payment of the 2020 claim, Kerstner "believed the Mesa policy provided coverage against the risk of theft," and Kerstner therefore "renewed [its]

---

[2] The Mesa policy was not attached to either Kerstner's original complaint or its amended complaint.  However, Mesa asserts, and Kerstner does not dispute, that the policy is "appropriately considered at the motion to dismiss stage" pursuant to the incorporation by reference doctrine.  *See* ***Soderlund v. Zibolski***, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015).

insurance policy with Mesa in January 2021, in January 2022, and in January 2023."

¶5      On December 14, 2022, Kerstner discovered that catalytic converters had again been stolen from several vehicles on its lot.  Kerstner reported the theft to Mesa, and in response, Mesa "did not raise a coverage defense, but asked for documentation of a police report, documentation on purchase of the vehicles, documentation on title for the vehicles, and documentation on the cost of the vehicles."  Mesa "delayed paying on the claim and continued to ask for additional documentation on the vehicles throughout 2023."

¶6      On May 21, 2023, Kerstner discovered a third theft of catalytic converters from additional vehicles on its lot.  Kerstner reported the theft to Mesa, and Mesa again asked for the same types of documentation it requested in response to Kerstner's 2022 loss.  Thereafter, on November 29, 2023, Mesa "informed Kerstner, for the first time, that the theft of the catalytic converters from the vehicles was not covered because Kerstner's lot lacked a perimeter fence with a gate."  According to the amended complaint, if Mesa had told Kerstner in 2020 "that loss to a vehicle on [Kerstner's] lot was not covered, [Kerstner] would have sought insurance coverage from a different insurance company."

¶7      On December 12, 2023, Kerstner filed its original summons and complaint in this action, seeking damages for "Mesa's breach of contract to provide the requested coverage" and for Mesa's "negligence in providing the requested coverage."  Kerstner also sought reformation of the policy "to provide coverage for the theft of catalytic converters from the vehicles on Kerstner's lot."  Finally, Kerstner alleged that Mesa "is estopped from asserting a coverage defense based on the lack of a fence and gate along the perimeter of Kerstner's lot."

¶8      Mesa moved to dismiss Kerstner's original complaint in its entirety, arguing that it failed to state a claim on which relief could be granted. Following briefing by the parties, the circuit court granted the motion to dismiss in part and denied it in part. Specifically, the court concluded that Kerstner's original complaint failed to state a claim for breach of contract or estoppel but adequately stated claims for reformation and "negligent procurement of insurance."[3]

¶9      Kerstner then filed an amended complaint, which contained the same factual allegations set forth above. The amended complaint again asserted claims for "breach of contract to provide the requested coverage," for "negligence in providing the requested coverage," for reformation of Kerstner's policy "to provide coverage for the theft of catalytic converters from the vehicles on Kerstner's lot," and for estoppel.

¶10     Mesa moved to dismiss Kerstner's amended complaint in its entirety, again arguing that the amended complaint failed to state a claim on which relief could be granted. Mesa acknowledged that some of its arguments in support of its motion to dismiss the amended complaint were the same as arguments contained in its prior motion to dismiss, but it claimed that it was also asserting new arguments. In particular, Mesa noted that its arguments regarding the negligence and reformation claims, both of which the circuit court had previously declined to dismiss, "addresse[d] the Court's analysis in its prior ruling head on, respectfully urging the Court to dismiss both of those claims, along with the breach of contract and estoppel claims."

---

[3] This court denied Mesa's petition for leave to appeal the circuit court's nonfinal order denying in part and granting in part Mesa's motion to dismiss Kerstner's original complaint.

¶11 Following briefing by the parties, the circuit court issued a written decision granting Mesa's motion to dismiss Kerstner's amended complaint in its entirety. The court subsequently entered a final judgment dismissing the amended complaint, and Kerstner now appeals from that judgment.

## DISCUSSION

¶12 "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (citation omitted). Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. *Id.*, ¶17. On review, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom," but "legal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss." *Id.*, ¶19. "[T]he sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled. Plaintiffs must allege facts that plausibly suggest they are entitled to relief." *Id.*, ¶31.

## I. Law of the case

¶13 On appeal, Kerstner argues that after the circuit court denied Mesa's motion to dismiss the negligence and reformation claims in Kerstner's original complaint, the law of the case doctrine barred the court from granting Mesa's motion to dismiss the negligence and reformation claims in Kerstner's amended complaint. We reject this argument.

¶14    "The law of the case is a 'longstanding rule' that requires courts to adhere to an appellate court's ruling on a legal issue 'in all subsequent proceedings in the trial court or on later appeal.'"  ***State v. Jensen***, 2021 WI 27, ¶13, 396 Wis. 2d 196, 957 N.W.2d 244 (citation omitted).  "Whether a decision establishes the law of the case is a question of law that we review de novo."  ***Id.***, ¶12.

¶15    In Wisconsin, the law of the case doctrine applies only to an *appellate* court's prior decision in a case.  *See, e.g.*, ***id.***, ¶13 (explaining that the law of the case doctrine requires courts "to adhere to an *appellate* court's ruling on a legal issue" in all subsequent proceedings (emphasis added)); ***Novell v. Migliaccio***, 2008 WI 44, ¶64, 309 Wis. 2d 132, 749 N.W.2d 544 (same); ***State v. Moeck***, 2005 WI 57, ¶18, 280 Wis. 2d 277, 695 N.W.2d 783 (same).  Here, there was no prior *appellate* court decision that prevented the circuit court from granting Mesa's motion to dismiss the negligence and reformation claims in Kerstner's amended complaint.  Under these circumstances, the law of the case doctrine is inapplicable.

¶16    In arguing to the contrary, Kerstner cites ***Ridgeway v. Montana High School Ass'n***, 858 F.2d 579, 588 (9th Cir. 1988), asserting that in that case, the United States Court of Appeals for the Ninth Circuit "expressly rejected the argument that the law of the case doctrine only applies to issues decided by an *appellate* court, and recognize[d] that it also applies to prior orders of a trial court."  Kerstner further contends that the Wisconsin Supreme Court "cited and quoted" ***Ridgeway*** "with approval" in ***State v. Stuart***, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82.

¶17    Kerstner's reliance on ***Ridgeway*** is misplaced.  ***Ridgeway***, a federal case, applied the federal law of the case doctrine.  In federal court, unlike in

Wisconsin, "[d]ecisions made by a district court during the course of litigation establish the law of the case." 18 MOORE'S FEDERAL PRACTICE – CIVIL § 134.22[1][a] (Matthew Bender 3d ed. 2026).

¶18 Moreover, *Stuart* did not cite or quote *Ridgeway* for the proposition that the law of the case doctrine may apply absent a prior appellate court decision. Rather, *Stuart* quoted a single sentence from *Ridgeway* that set forth the general purpose of the law of the case doctrine. *See Stuart*, 262 Wis. 2d 620, ¶23. Moreover, *Stuart* affirmed that "[t]he law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an *appellate* court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" *Id.* (emphasis added; citation omitted). In the face of binding Wisconsin authority recognizing that the law of the case doctrine requires a prior decision on a legal issue by an appellate court, Kerstner's reliance on *Ridgeway*— a federal decision that is not binding authority—is unavailing.

¶19 Regardless, even if Wisconsin law did permit application of the law of the case doctrine absent a prior appellate court decision, a circuit court would still retain discretion to depart from its prior decisions under certain circumstances. Even in federal court, "[t]he law of the case doctrine does not … limit the court's power to reconsider or change its decision, it merely protects the ability of the court to build to its final judgment by cumulative rulings." 18 MOORE'S FEDERAL PRACTICE – CIVIL § 134.22[1][a] (Matthew Bender 3d ed. 2026) (footnote omitted). "Judges are constantly reexamining their prior rulings in a case on the basis of new information or argument, or just fresh thoughts, without excogitating a 'clear and convincing' reason for their change of heart." *Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir. 1991).

¶20    Here, the circuit court noted that after it denied Mesa's motion to dismiss with respect to the negligence and reformation claims in Kerstner's original complaint, Kerstner filed an amended complaint, which superseded the original complaint and rendered the court's prior decision on Mesa's earlier motion to dismiss "irrelevant." *See* 3 MOORE'S FEDERAL PRACTICE – CIVIL § 15.17[3] (Matthew Bender 3d ed. 2026) ("Because an amended complaint supersedes any prior complaint and becomes the operative pleading, it will typically moot the issue of whether a district court order addressed to the prior complaint was correct."). The court also noted that Mesa's motion to dismiss the amended complaint "expand[ed] on" the arguments raised in Mesa's prior motion. Thus, even if the law of the case doctrine did apply here, Kerstner has failed to show that the circuit court erroneously exercised its discretion by departing from its prior rulings on Kerstner's negligence and reformation claims under the specific circumstances of this case.

## II. Breach of contract

¶21    On appeal, Kerstner advances two arguments in support of its assertion that the circuit court erred by dismissing the breach of contract claim in its amended complaint. First, Kerstner argues that the facts alleged in its amended complaint were sufficient to state a claim that Mesa breached the policy by denying coverage for Kerstner's 2022 and 2023 theft claims. Second, Kerstner contends that Mesa breached a separate contract, by which it agreed to provide adequate insurance coverage for Kerstner. We reject both of these arguments.

¶22    With respect to Kerstner's first argument, the parties agree that the policy provided an initial grant of coverage for Kerstner's 2022 and 2023 theft claims. Their dispute pertains to whether Exclusion 8(3)(a) barred coverage for

those claims. Kerstner argues that Exclusion 8(3)(a) is ambiguous and therefore must be construed against Mesa and in favor of coverage. *See Marnholtz v. Church Mut. Ins.*, 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708 (explaining that policy language is ambiguous if it is reasonably susceptible to more than one interpretation and that ambiguous policy language is construed against the insurer and in favor of coverage). Additionally, Kerstner argues that even absent any ambiguity, "there would still be insufficient evidence to dismiss the breach of contract/policy claim because there is no allegation, let alone sworn testimony[,] that at the time of the theft, the vehicles had been left unattended."

¶23    Kerstner raises these arguments for the first time on appeal. In the circuit court, in its brief opposing Mesa's motion to dismiss the original complaint, Kerstner conceded that "[Mesa's] argument that the policy does not provide coverage misses the mark.… It is absolutely agreed that the policy does not provide coverage." Kerstner subsequently incorporated that concession into its brief opposing Mesa's motion to dismiss the amended complaint. Kerstner never argued in the circuit court that Exclusion 8(3)(a) was ambiguous or that the exclusion did not apply because there was no allegation in either the original complaint or the amended complaint that the thefts occurred when Kerstner's premises were "closed for business or unattended."

¶24    We agree with Mesa that "[h]aving conceded the interpretation and application of Exclusion 8(3)(a) before the circuit court, Kerstner[] cannot now change course on appeal and argue, for the first time, that the [p]olicy is ambiguous or that the exclusion does not apply." "Arguments raised for the first time on appeal are generally deemed forfeited." *Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810. "We will not … blindside [circuit] courts with reversals based on theories which did not originate in their

10

forum." *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995). Accordingly, we reject Kerstner's argument that the circuit court erred by denying its breach of contract claim because the facts alleged in its amended complaint were sufficient to state a claim that Mesa breached the policy by denying coverage for Kerstner's 2022 and 2023 theft claims.

¶25    As noted, Kerstner also contends that Mesa breached a separate contract, by which Mesa agreed to provide adequate insurance coverage for Kerstner. According to Kerstner:

> There are two contracts at issue here. The first contract is Mesa's agreement to provide Kerstner with a policy that provides coverage against theft and damage for the vehicle inventory on [its] lot. The second agreement is the policy itself. If the policy itself provides coverage, then that means that Mesa had fulfilled its obligation to provide Kerstner with the requested coverage. On the other hand, if the policy itself is inadequate and does not provide coverage, then that means that Mesa failed to provide Kerstner with the adequate policy that it agreed to procure.

¶26    This argument fails because Kerstner's amended complaint does not allege the existence of a second contract to procure "adequate insurance"—i.e., insurance that would have covered the 2022 and 2023 thefts. Instead, the amended complaint alleges that: (1) Kerstner "sought insurance coverage for the risk of loss to the automobiles on the lot"; (2) Kerstner "communicated [its] request for casualty coverage on said automobiles to Mesa"; (3) Mesa "assured Kerstner that a Commercial Insurance Policy through Mesa would provide casualty coverage for the risk of loss to the automobiles on [its] lot"; and (4) Kerstner then purchased a commercial insurance policy from Mesa.

¶27    Thus, according to the allegations in the amended complaint, Kerstner requested "casualty coverage," and Mesa represented that its policy

would provide "casualty coverage." However, the policy that Kerstner subsequently purchased from Mesa does, in fact, provide casualty coverage. It simply excludes from that coverage specific types of losses—including the thefts at issue in this case. There is no allegation in the amended complaint that Kerstner requested—or that Mesa agreed to provide—a policy that would cover *all* thefts of vehicles or vehicle equipment from Kerstner's lot, without any exclusion barring coverage if the thefts occurred when the lot was unattended or if the lot was unprotected by a perimeter fence. Thus, the amended complaint fails to state a claim that Mesa breached a contract to procure "adequate" insurance for Kerstner that would have covered the 2022 and 2023 thefts.

¶28 Moreover, Kerstner's claim that Mesa breached a contract to provide adequate insurance fails for the additional reason that the policy contains an integration clause, which states: "This policy contains all the agreements between you and us concerning the insurance afforded." When a contract "contains an unambiguous merger or integration clause, the court is barred from considering evidence of any prior or contemporaneous understandings or agreements between the parties, even as to the issue of integration." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶39, 330 Wis. 2d 340, 793 N.W.2d 476. "[A]n unambiguous merger or integration clause demonstrates that the parties intended the contract to be a final and complete expression of their agreement." *Id.*

¶29 The integration clause in the policy clearly and unambiguously states that the policy contains "all the agreements" between Mesa and Kerstner "concerning the insurance afforded." We agree with Mesa that the policy's use of this broad language demonstrates that "if a separate agreement to procure coverage existed, that agreement would be written down in the [p]olicy." The policy, however, contains no such agreement. As such, the integration clause

forecloses Kerstner's argument that the parties had a separate contract requiring Mesa to procure adequate insurance coverage for Kerstner.

## III. Reformation

¶30    Kerstner also argues that the circuit court erred by granting Mesa's motion to dismiss the reformation claim in Kerstner's amended complaint. "The general rule is that a contract may be reformed when the 'writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing.'" *Vandenberg v. Continental Ins.*, 2001 WI 85, ¶50, 244 Wis. 2d 802, 628 N.W.2d 876 (citation omitted).  In the context of insurance polices, however, "there are special considerations regarding reformation." *Id.*, ¶53.

> On the one hand, a policy may not be rewritten to bind the insurer to a risk that it did not contemplate and for which it received no premium.  But on the other hand, "in insurance cases less is required to make out a cause of action for reformation than in ordinary contract disputes."

*Id.* (footnotes omitted).

¶31    More specifically, in the insurance context, "mutual mistake is proven when the party applying for insurance proves that he made certain statements to the agent concerning the coverage desired, but the policy as issued does not provide the coverage desired." *Trible v. Tower Ins.*, 43 Wis. 2d 172, 182, 168 N.W.2d 148 (1969).  In addition, "reformation may be justified when the insured can demonstrate that there was an understanding regarding the desired coverage based on prior dealings, even in the absence of an express request for coverage." *Vandenberg*, 244 Wis. 2d 802, ¶55.

¶32    In this case, Kerstner seeks to reform the policy by removing Exclusion 8(3)(a), which bars coverage for theft of an auto or an auto's equipment when Kerstner's premises are closed or unattended and not protected by a perimeter fence.  However, the amended complaint contains no allegation that Kerstner made an express request for theft coverage *without* such an exclusion.  Rather, the amended complaint merely alleges that: (1) Kerstner communicated a "request for casualty coverage on said automobiles to Mesa"; and (2) "Mesa assured Kerstner that a Commercial Insurance Policy through Mesa would provide casualty coverage for the risk of loss to the automobiles" on Kerstner's lot.  These allegations regarding Kerstner's general request for "casualty coverage" are insufficient to show that Kerstner made an express request for theft coverage under all circumstances, absent the limitations in Exclusion 8(3)(a).

¶33    The allegations in the amended complaint are also insufficient to show the existence of "an understanding regarding the desired coverage based on prior dealings."  *See id.*  Kerstner cites paragraph 19 of the amended complaint, which alleged that "both Kerstner and Mesa believed that the Mesa policy provided coverage for theft of a catalytic converter from a vehicle on Kerstner's lot."  The policy *did*, however, provide coverage for thefts of catalytic converters from vehicles on Kerstner's lot under certain circumstances; it simply excluded coverage for thefts occurring when the premises were closed for business or unattended if the premises were not protected by a perimeter fence.  The amended complaint does not allege that Kerstner and Mesa believed that thefts of vehicle equipment would be covered by the policy under those specific circumstances.

¶34    Kerstner also cites the allegations in its amended complaint regarding Mesa's payment of Kerstner's 2020 theft claim—namely, that Mesa sent an adjuster to Kerstner's property to evaluate that claim; that there was no fence

14

around the perimeter of the property at that time; and that Mesa nevertheless paid the 2020 claim. According to Kerstner, this "course of conduct" shows that both parties understood that a theft of vehicle equipment would be covered even though Kerstner's property was not surrounded by a perimeter fence.

¶35 We agree with Mesa, however, that "[a]llowing Kerstner[] to proceed on a reformation claim that depends on the payment of the March 2020 claim would, in essence, work a waiver of Exclusion 8(3)(a)." As discussed below, Wisconsin courts have long held that "the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." *McCoy v. Northwestern Mut. Relief Ass'n*, 92 Wis. 577, 585, 66 N.W. 697 (1896). *See infra* ¶¶42-43. Moreover, as Mesa explains:

> It is also worth pausing to reflect on the practical implications of Kerstner's reformation argument. Kerstner[] argues that Mesa's payment of a single, low-value claim during one policy term can create liability for all similar claims in future policy years. If that's correct, it would put insurers in an impossible position. Currently, it is not at all unusual for an insurance company to pay a debatable insurance claim to avoid the cost and time associated with litigation. But if Kerstner's theory of reformation were correct, insurers would have to either litigate all debatable claims (regardless of the dollar value of the claim) or else risk their policies being reformed to provide coverage for all similar claims in the future. This is why Wisconsin courts have long held that coverage cannot be created by waiver or estoppel.

15

For these reasons, we reject Kerstner's argument that the allegations in the amended complaint regarding Mesa's payment of the 2020 claim are sufficient to state a claim for reformation of Kerstner's insurance policy.[4]

## IV. Negligence

¶36    Kerstner also argues that the circuit court erred by dismissing its claim against Mesa for negligent procurement of insurance. Wisconsin courts have recognized a cause of action against an insurance agent for negligent procurement of insurance under certain circumstances. *See, e.g.*, *Avery v. Diedrich*, 2007 WI 80, ¶23, 301 Wis. 2d 693, 734 N.W.2d 159 ("When an insurance agent fails to act with reasonable care, skill, and diligence in procuring coverage he or she agreed to procure, the agent has breached his or her duty to the insured."). Mesa argues, however, that "[n]o Wisconsin case has held that negligent procurement of insurance is available when no agency relationship is alleged." Mesa further asserts that Kerstner's amended complaint "does not allege that an agency relationship existed between Kerstner[] and Mesa" and instead "alleges only that Mesa is Kerstner's insurer under the [p]olicy." Mesa therefore contends that the amended complaint fails to state a claim against Mesa for negligent procurement of insurance.

---

[4] On appeal, Kerstner also alleges that the circuit court committed several errors in its decision granting Mesa's motion to dismiss the reformation claim. For instance, Kerstner asserts that the court erred by characterizing the allegation in paragraph 19 of the amended complaint as "a legal conclusion, not a factual allegation" and by "grafting a burden of proof requirement onto the dismissal standard." As noted above, however, whether a complaint states a claim upon which relief can be granted is a question of law that we review independently. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. Given our de novo standard of review, we need not address these alleged errors in the circuit court's reasoning.

¶37     In its reply brief, Kerstner fails to address Mesa's argument that the absence of any allegations regarding an agency relationship is fatal to Kerstner's negligent procurement of insurance claim.     We therefore deem this point conceded. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (explaining that unrefuted arguments may be deemed conceded).

¶38     Regardless, even assuming that Kerstner may assert a negligent procurement of insurance claim against Mesa absent any allegations regarding an agency relationship, we nevertheless conclude that Kerstner's amended complaint failed to state a claim for negligent procurement of insurance.  "[A]bsent special circumstances, an insurance agent's duty to an insured is limited."  *Avery*, 301 Wis. 2d 693, ¶26 (citation omitted).

> Special circumstances exist when something more than a standard insured-insurer relationship exists, such as an express agreement that an agent will advise the insured about his or her coverage.  Special circumstances may also arise if an insured pays the agent compensation for his or her advice, an insured has entrusted the agent to an extent that the agent appreciates that he or she has an enhanced duty of providing advice, or the insured relies on advice after an agent held himself or herself out as a highly skilled insurance expert.

*Id.*, ¶27 (citations omitted).

¶39     In this case, Kerstner's amended complaint does not allege that there was an express agreement for Mesa to advise Kerstner about its coverage; that Kerstner paid Mesa compensation for its advice; that Kerstner entrusted Mesa to such an extent that Mesa appreciated that it had an enhanced duty of providing advice; or that Mesa held itself out as a highly skilled insurance expert.  *See id.* On appeal, Kerstner alleges that its amended complaint adequately alleged the

requisite special circumstances "based on the years the coverage was in effect, the premiums accepted, and most significantly, that Mesa had previously paid for the exact same claim under the exact same policy." These allegations, however, do not show that the type of special circumstances described in *Avery* were present in this case. Instead, as the circuit court aptly noted, the allegations in Kerstner's amended complaint "simply describe a standard insured-insurer relationship, which is insufficient to trigger any duty."

¶40 Our supreme court has also stated that an insurance agent "does not have a duty to procure requested insurance coverage until there is an agreement that the agent will do so." *Id.*, ¶29. Kerstner asserts that its amended complaint sufficiently alleged an agreement to procure requested insurance coverage by alleging that: (1) Kerstner communicated to Mesa a request for casualty coverage for the vehicles on its lot; and (2) "Mesa assured Kerstner that a Commercial Insurance Policy through Mesa would provide casualty coverage for the risk of loss to" those automobiles.

¶41 As we have already explained, however, the policy that Kerstner purchased from Mesa *does* provide casualty coverage for the vehicles on Kerstner's lot. While the policy excludes from that coverage specific types of losses—including the thefts at issue in this case—the amended complaint does not allege that Kerstner requested, or that Mesa agreed to provide, a policy that would cover *all* thefts of vehicles or vehicle equipment from Kerstner's lot under all

18

circumstances. For this additional reason, Kerstner's amended complaint failed to state a claim against Mesa for negligent procurement of insurance.[5]

## V. Estoppel

¶42 Finally, Kerstner argues that the circuit court erred by dismissing its estoppel claim. More specifically, Kerstner asserts that Mesa should be estopped from denying coverage because: (1) "Mesa said that it could provide … coverage [for the vehicles on Kerstner's lot] and sold Kerstner a policy," and "[a]t no time did Mesa tell Kerstner that the policy did not provide the requested coverage"; and (2) "when a theft occurred, Kerstner submitted a claim, believing it was covered, and Mesa paid it, thereby confirming Kerstner's belief." Kerstner asserts that it relied on "Mesa's words and actions to believe that the policy provided coverage," and it therefore did not "return to the marketplace and find an insurance company that would be willing to provide the requested coverage."

¶43 This argument fails because, as noted above, Wisconsin courts have long held that "the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." *See McCoy*, 92 Wis. at 585; *see also Ahnapee & W. Ry. Co. v. Challoner*, 34 Wis. 2d 134, 140, 148 N.W.2d 646 (1967) ("[E]stoppel has not been used in this state or in the majority of states as a means whereby the scope of coverage of an insurance policy can be expanded to include coverage which was not provided for or was excluded in the contract."); *Shannon v. Shannon*, 150 Wis. 2d 434, 450-51, 442 N.W.2d 25

---

[5] On appeal, Kerstner argues that the circuit court erred by "operating with an implied premise that a negligent procurement of insurance claim can only exist where there is illusory coverage." Again, given our de novo standard of review, we need not address this alleged error in the circuit court's reasoning. *Data Key Partners*, 356 Wis. 2d 665, ¶17.

(1989) ("The general rule is well established that the doctrine of waiver or estoppel based upon the conduct or action of the insurer or its agent is not applicable to matters of coverage as distinguished from grounds for forfeiture."). More recently, in 2012, our supreme court reiterated that "[w]aiver and estoppel cannot be used to supply coverage from the insurer to protect the insured against risks not included in the policy or expressly excluded therefrom, for that would force the insurer to pay a loss for which it has not charged a premium." ***Maxwell v. Hartford Union High Sch. Dist.***, 2012 WI 58, ¶35, 341 Wis. 2d 238, 814 N.W.2d 484.

¶44 Kerstner's policy expressly excludes coverage for the theft claims at issue in this case. As such, pursuant to the authorities cited above, Kerstner cannot rely upon the doctrine of estoppel to expand the policy's coverage to include those claims, thus forcing Mesa "to pay a loss for which it has not charged a premium." *See **id.*** Accordingly, the circuit court properly granted Mesa's motion to dismiss Kerstner's estoppel claim.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.